THE PEOPLE *ex rel.* THOS. W. MULFORD *v.* JOSEPH A. MAYHEW.

$\frac{26}{78}\ \frac{655}{604}$

PURCHASER OF LAND AT SHERIFF'S SALE.—The purchaser of land at Sheriff's sale does not by his purchase acquire the title to the land. The title passes by the execution and delivery of the Sheriff's deed. The purchaser prior to the execution of the Sheriff's deed holds merely a lien upon the land.

REDEMPTION FROM SHERIFF'S SALE IS PAYMENT OF A DEBT.—The obligation of a judgment creditor or redemptioner to pay a certain amount of money in order to exercise the statutory right of redemption from a sale of land made by a Sheriff, is a debt within the meaning of the Act of Congress making treasury notes lawful money and a legal tender in payment of debts.

REDEMPTION IN TREASURY NOTES.—Land sold at Sheriff's sale under a judgment payable generally in money, without specifying a particular kind of money, may be redeemed with treasury notes made a legal tender by Act of Congress.

TREASURY NOTES A LEGAL TENDER.—Treasury notes issued under the Act of Congress of February 25th, 1862, are lawful money, and a legal tender in payment of all debts, public and private, except certain public debts mentioned in the Act.

WHAT MONEY SHERIFF MAY RECEIVE IN REDEMPTION.—The Sheriff is the special agent of the purchaser of land authorized to receive the redemption money for him, and as such, may receive in redemption what is regarded as current money at the time and place, though not strictly a legal tender, unless the judgment under which the sale was made was rendered payable in a particular kind of money.

APPEAL from the District Court, Third Judicial District, Alameda County.

The facts are stated in the opinion of the Court.

*Sloan & Provines,* for Appellants.

The power of Congress to authorize the issuance of notes, bonds, or other obligations of the United States, is one thing, but its power to declare that the same shall be current money —a lawful tender—a standard of value—is quite another thing. We do not, in this case, however, question the power of Congress. · It is sufficient to observe, touching the treasury notes so to be issued, that it did not undertake to clothe them with all the attributes of money. They are made payable and receivable as such only for certain specified purposes.

They are made receivable 'in payment of all demands due to the United States, except duties on imports; and of all demands against the United States, except for interest on bonds and notes.

The Act declares " they shall be lawful money, and a legal tender in payment of all *debts*, public and private, within the United States, except duties on imports, and interest as aforesaid."

The statutory right of the debtor to redeem from the purchaser the land sold under judgment, is very different from an obligation.

The privilege of redeeming is not confined to the judgment debtor; nor is it limited to the case of a purchase by the judgment creditor. A purchase by any one, creditor or stranger, discharges the judgment to the extent of the sum bid, less the costs of sale, whatever that may be. Of course, if the sum bid be sufficient, the whole judgment is satisfied, and the debtor discharged from his obligation. In either case, he is discharged to the extent of the net amount of the purchase money produced; and, consequently, if the plaintiff should become the purchaser, he ceases to be a creditor to that extent.

The sale, therefore, results in the extinguishment, not in the creation of a debt. Debt implies an obligation, on the one hand, and the right to demand and enforce payment, on the other. But the purchaser can take no legal measures to compel redemption.

*The act of redeeming under the statute is clearly, then, not one*

*of the cases mentioned in the Act of Congress in which treasury notes are lawful money or a legal tender.*

The case stands just the same as if the Act had provided for the issuance and sale of such notes, without declaring that they should be payable or receivable as a circulating medium, or be lawful money for any purpose. Those notes are promises to pay; and, being issued by authority of an Act of Congress, may be regarded as pledges of the faith of the United States. The question before the Court is, therefore, to be considered as if the Act had authorized the issuance of those notes, and stopped there.

*W. W. Crane, Jr.*, for Respondent.

When Ward and wife paid to the Sheriff the sum of fifteen thousand six hundred and eighty dollars in United States treasury notes, they thereby paid and discharged the *debt* owing by them, and the judgment and sale became as though they never had existed. It was the payment of a debt within the meaning of the Act of Congress of February 25, 1862. (*McCarthy* v. *Christie*, 13 Cal. 79.)

Those who can redeem property are divided into two classes: 1st—the judgment debtor; 2d—a creditor having a lien by judgment, etc. (Practice Act, Sec. 230.)

When the judgment debtor redeems, he pays his debt, together with a penalty. When the creditor redeems, he is only subrogated to the rights of the purchaser. The very idea of redemption as between the judgment creditor and debtor involves the payment in whole or part of the debt.

It is true it is a statutory right, but it is a statutory contract. The purchaser takes the place of the execution creditor, with a lien upon the property, which, as against the debtor, he can enforce at the end of six months by calling for a deed. The debtor avoids this by in fact paying his debt in whole, or in part, to another person.

Mr. Justice Baldwin, speaking of redemption in an opinion denying a petition for a rehearing in *Tuolumne Redemption*

83

*Company* v. *Sedgwick*, 15 Cal. 529, says : " But the whole aim of our opinion was to show that the matter of redemption was a new contract, not connected with the original contract, but created or authorized by statute, as part of the remedy."

To the point, that upon a redemption by a judgment debtor, the sale becomes as though it never had been, but otherwise when by a creditor, see *Phyfe* v. *Kilcy*, 15 Wend. 252; *Bodine* v. *Moore*, 18 N. Y. 251.

The statute only requires the debtor to pay to the purchaser *the amount* of his purchase, with twelve per cent thereon in addition. (Practice Act, Sec. 231.)

Now, the *amount* of the purchase in this case was fourteen thousand dollars in treasury notes, and the purchasers were paid that amount. If they put it upon the ground that they paid a debt, it certainly was the payment of our debt, and we have now paid them that debt in the same currency that they used.

By the Court, RHODES, J.

A judgment of foreclosure was rendered in favor of Wm. N. Spear against John B. Ward and others, on the 6th of August, 1861 ; and in 1862 an order of sale was issued upon the judgment, and the defendant as the Sheriff of Alameda County, sold the mortgaged premises to the relator, Wicks and Smith jointly, as appears by his return, though the relator contends that he was the sole purchaser. The sale was made on the 22d day of December, 1862, for fourteen thousand dollars, which sum was paid by the relator in United States treasury notes. On the 28th day of April, 1863, John B. Ward paid to the defendant, as Sheriff, for the purchasers, the sum of fifteen thousand six hundred and eighty dollars in United States treasury notes, for the purpose of redeeming the land from the Sheriff's sale, and on the 6th day of May, 1863, the defendant paid the treasury notes to said Smith, who receipted to him therefor in the name of Mulford & Co. (the said Mulford, Wicks and Smith composing said firm of Mul

ford & Co.); and on the 11th of June, 1863, Smith returned the same treasury notes to the defendant, and told the Sheriff that he had informed Mulford (who returned about that time after an absence from the State from the month of January) of what he had done, and that Mulford refused to receive the treasury notes. The relator demanded a deed of the defendant for the land purchased, and it being refused, he commenced proceedings by mandamus, to compel the execution of the deed. The Court below refused the peremptory writ, and the relator appeals.

A preliminary point is raised by the respondent, that as the return of sale and the certificate of sale shows that the sale was made to Mulford, Wicks and Smith jointly, they should have united in these proceedings; but it is unnecessary to discuss the point.

The burden of the appellant's argument is directed to the proof of the proposition that, by the purchase at the Sheriff's sale, no debt was created between the purchaser and any of the parties to the proceedings, and that the person, whether a judgment debtor or redemptioner, who exercises the statutory right of redemption, does not pay or satisfy any *debt*, and that therefore the payment by the judgment debtor to the purchaser of treasury notes, which, by the Act of Congress, are declared a legal tender in payment of debts (except certain public debts mentioned in the Act) is insufficient to constitute a redemption of the land from the sale.

We understand it to be conceded by the parties that the payment by Ward to the Sheriff was proper, as regards the person paying and receiving, and that the nominal amount paid was the correct sum required for the redemption.

When a judgment debtor pays to the purchaser, at a sale under an execution or an order of sale, a sum of money for the purpose of effecting a redemption of the land, what can that which he pays be properly denominated? Suppose, first, that the judgment creditor is the purchaser, that the sum bid equals the amount of his judgment, and that thereupon the execution is credited by the Sheriff with the amount bid.

The purchaser does not thereby acquire the defendant's title to the land, for that passes to him by the execution and delivery of the Sheriff's deed. This is manifest by the provisions of section two hundred and thirty-two of the Practice Act, which declares in effect that upon a redemption being made by the debtor, the sale becomes null and void—which could not be the case if the title had passed—and by the fact that the purchaser can neither take nor recover the possession of the land previous to the Sheriff's deed. His judgment is not satisfied by the sale, for if the sale should for any reason be set aside, the judgment remains in full force, and such could not be the case if it had been satisfied. The purchaser, prior to the execution of the Sheriff's deed, holds merely a lien upon the land, differing from the lien of the judgment in this, that it is more specific and may continue after that of the judgment has expired, and that the lien is much nearer a complete enforcement than that of the judgment—the single act of the execution and delivery of the Sheriff's deed being required.

If the land is redeemed by a judgment creditor, the lien that was acquired by means of the purchase, vests in the redemptioner, and in consequence of the redemption, the judgment under which it was made also becomes a lien, that is enforced in the same manner as the purchaser's lien—that is, by a conveyance of the property. A second redemptioner acquires the two previous liens, but he acquires no part of either of the prior judgments, for his payment in redemption satisfied the purchaser's judgment and that of the first redemptioner. If a third person purchases at the Sheriff's sale, he occupies no other relation to the property than the judgment creditor would do if he had purchased, so far as the point under consideration is concerned. He acquires his lien in consequence of having paid the purchase money, and that is enforced also by the Sheriff's deed.

The lien, in either of the cases supposed, is discharged by the payment by the debtor of the amount of the purchase money and the percentage, etc., allowed by law; and the redemptioner's lien, if it has been redeemed by a redemptioner

—that is, the land is thus discharged of the lien resting upon it. If the right or interest that the purchaser or redemptioner holds prior to the execution of the Sheriff's deed, is not a mere lien, and with the qualities only of a lien, we are unable to give it a legal designation. (See *Vaughn* v. *Ely*, 4 Barb. 159, and cases cited.)

We cannot comprehend the idea that a lien, that may be discharged by the voluntary payment of a sum of money, is not a security for the payment of a debt. The error in the argument of the learned counsel for the appellant consists in assuming—tacitly, perhaps—that in order to be a debt, there must be a personal liability for the payment of the sum in question. A charge upon a specific parcel of a person's property for the payment of a sum of money constitutes a debt as fully as a demand which is or may be made a charge upon all his property, both present and future, and it makes no difference, in this respect, whether the lien is acquired by express agreement or by operation of law. This becomes more apparent when it is remembered that the payment of a debt, for which we say there is a personal liability, is enforced by the seizure and sale of the debtor's property, and in the absence of the power to imprison for debt, that is the only means of enforcing payment. If a person owning real estate, mortgages it to secure the payment of money, and then conveys it, we frequently say that the debt, so secured, is not the vendee's debt, and it is not his debt in the sense of a personal contract or liability, but it is his debt to the extent that his property is liable for its payment.

The same is true of a large class of cases, in which the person, who owned the property at the time of the collection of the claim, did not personally contract the debt; and in still other classes—as cases in the Admiralty Courts for salvage— in which no one contracted the debt, but the liability was cast on the property by operation of law.

We think the term "debt" employed in the Act of Congress is not limited to a demand, for which a personal liability exists against the party offering or making the payment, but

that it comprehends, also, all liens, claims and charges upon property for the payment of money; and we do not think Congress could have intended the inconsistency if not the hardships that would be manifest if a mortgagor is permitted, under the provisions of the Act, to pay the mortgage debt in any kind of money, but the purchaser of the property charged with the mortgage is restricted to gold coin alone.

If, however, we misconstrue the Act of Congress, then it becomes necessary to ascertain whether treasury notes are money, and to determine the powers of the Sheriff in case of redemption.

The Act declares that " they shall be lawful money and a legal tender in payment of all debts, public and private, within the United States, except duties on imports and interest, as aforesaid." The portion of the Act cited seems to include two objects: First, to declare the treasury notes lawful money; and, second, to prescribe in what cases they shall be a legal tender.

Silver coin of the United States is lawful money, but is not a legal tender in payment of sums exceeding five dollars; and the fact that it is not a legal tender for the payment of a sum exceeding five dollars does not prevent its being lawful money. So with the treasury notes, though they are not a legal tender for the payment of certain demands, yet they are lawful money. This question was carefully considered in the case of *Lick* v. *Faulkner*, 25 Cal. 404, in which we held them to be lawful money, and we are satisfied with our views there expressed.

If they are not money, either declared as such by the Act of Congress, or recognized as such by commercial usagè in this State, as bank bills are recognized as money in most of the States of the Union, then the appellant has no standing in this case, because he has not purchased the land, for the proceedings at the sale do not amount to a purchase by a third person until he has paid the amount of his bid in *money.*

The Sheriff, under the provision of section two hundred and thirty-two of the Practice Act, is authorized to receive the

redemption money for the purchaser. For that purpose, the law constitutes him a special agent for the purchaser.

In *Dickenson* v. *Galliland*, 1 Cow. 481, it is held that the Sheriff, in respect to the redemption, is a special agent; and in *ex parte Board* (4 Cow. 420,) it is said that he is a *quasi* agent. In the last case, the Court held that he was not a mere naked agent, subject to the absolute control of the creditor, and he having received bank bills in redemption, contrary to the express direction of the creditor, the Court upheld his acts, and asserted for him the same discretion that he would have on a sale upon execution.

It is unnecessary to go the extent of holding that the Sheriff may violate the directions of the creditor in any case where, if the money was tendered to him, he might properly refuse to accept it, unless it was tendered in a particular kind of money; but those and a vast number of cases proceed on the ground, expressly or by necessary implication, that the Sheriff, as such special agent, may receive in redemption what is regarded as current money at that time and place, though not strictly a legal tender. Hence, a payment to the Sheriff, without objection by him, in bank bills or foreign coin, by tale, has been held good. (*Wright* v. *Reed*, 3 T. R. 554; *Ex parte Becker*, 4 Hill, 613; *Hall* v. *Fisher*, 9 Barb. S. C. 17; see also *United States Bank* v. *Bank of Georgia*, 10 Wheat. 347.)

We therefore hold, both upon principle and authority, that the payment in United States treasury notes by the judgment debtor to the Sheriff, for the purchaser, of the amount of his purchase, was a legal payment, and was sufficient to effect a redemption of the property sold.

Judgment affirmed.

By the Court, RHODES, J., on petition for rehearing.

The appellant in his petition for rehearing again insists that the payment by the judgment debtor of the amount necessary to effect a redemption of his land, sold by the Sheriff under a

judgment of foreclosure, is not the payment of a debt within the meaning of the term debt as employed in the Act of Congress providing for the issue of treasury notes. This point was passed upon by us, in the opinion already rendered in the case, after very careful consideration, and the result arrived at was adverse to the very forcible views of the learned counsel, but we think the decision of the point is unnecessary and that the case can be properly determined without regard to the solution of that question.

Only two questions are necessarily involved in the case, and they relate to the capacity in which the Sheriff acts in receiving the redemption money and the character of treasury notes as lawful money.

We are satisfied that the Sheriff is by law constituted the agent of the purchaser in receiving the redemption money, and that as such agent, in cases where neither the law nor the judgment of the Court directs him to receive a particular kind of money only, he may properly receive for the purposes of redemption any lawful money, in the absence of instructions from the purchasers, when he has the right to give such instructions, restricting him to a certain kind of money.

The remaining question is whether treasury notes are "lawful money," notwithstanding they are declared by the Act of Congress a legal tender for certain purposes, but not for all purposes for which money may be employed. On this question we see no sufficient reason for changing the opinion already announced by us, that treasury notes are lawful money.

As we have already remarked, silver money is not a legal tender in payment of sums exceeding five dollars, but can it be questioned that it is lawful money? If a debtor, to satisfy his obligation for the payment of a sum of money exceeding five dollars—the kind not being specified in the contract— should pay the creditor the amount in silver coins, and nothing should be said by the debtor or creditor at the time of its payment as to its being paid or received as or in lieu of money that would be a legal tender in the payment of the

debt ; and if thereafter an action should be brought on the contract, could not the debtor rely upon payment for his defense, or would he be obliged to answer an accord and satisfaction, or a set-off? If the silver coins are not lawful money, they could not be employed in the payment of a debt calling for money, unless the creditor agreed to receive and did receive them as lawful money. Treasury notes, like silver coins, are not a legal tender for all purposes, but, like them, constitute lawful money.

It is proper to remark, though not in response to the arguments of the learned counsel for the appellant, that the purchase at the Sheriff's sale, in this case, was made with treasury notes, and that the provisions of the " Specific Contract Act" are not in any manner involved in this case, nor the case out of which the present action arose.

We do not desire a reargument of the questions necessarily involved in this case, and on which the decision hinges, and must therefore deny the petition.

Rehearing denied.

Mr. Justice SAWYER expressed no opinion.