BENJAMIN BELLOC, Respondent, *v.* WM. H. DAVIS and MARIA (his wife), DENNIS SULLIVAN, WM. S. MOSS, ADDISON M. CRANE, WILLIAM N. SPEAR, C. W. HATHAWAY, T. W. MULFORD and WILLIAM B. AGARD, Appellants.

Statute of Limitations.—Upon a note payable six months after date, with interest payable monthly, and further providing that "in case default be made in any payment of interest, when the same shall become due, then the whole amount of principal and interest to become due and payable immediately upon such default," the cause of action, within the true meaning of the Statute of Limitations, arises at the expiration of the credit fixed by the note, and not at the time when default is made in the payment of the interest.

Idem.—Such a provision in a note is in the nature of a penalty, inserted for the sole benefit of the creditor, and one which he may enforce or waive, at his election.

Idem—Waiver of the Forfeiture.—By accepting the payment of the interest after default has been made, the creditor waives all benefit from the default, and thereafter the rights and obligations of both parties continue, without regard to the forfeiture.

The case of *Hemp* v. *Garland* (4 Q. B. 519); 3 Gale & Davidson, 402; 45 Eng. Com. Law, p. 519, commented on, and doubted.

LEGAL TENDER ACT.—The question of the constitutionality of the Legal Tender Act, of February 25, 1862, must be considered as put to rest by the previous adjudications of this Court, unless they shall be overruled by the Supreme Court of the United States.

IDEM.—A debt secured by note and mortgage made and executed before the passage of the Legal Tender Act, may be discharged in legal tender notes, if they contain no stipulation requiring payment to be made in coin.

SPECIFIC CONTRACT ACT.—Where the makers of a note and mortgage, subsequently to their execution (being otherwise capable of contracting), entered into the following promise in writing, in consideration that the creditor would forbear to sue: "We promise to pay our indebtedness to Benjamin Belloc in United States gold coin;" it is sufficient to bring the note and mortgage within the operation of the Specific Contract Act.

MARRIED WOMAN.—But if one of the makers of the note and mortgage, and of the subsequent promise, was a married woman, such subsequent promise could not be enforced against her, under any circumstances, personally; nor against her estate, unless the instrument in writing containing the subsequent promise, had been acknowledged and certified as required by law.

SUBSEQUENT ENCUMBRANCERS.—Nor would subsequent encumbrancers or purchasers, whose rights had attached to the mortgaged property prior to the date of the subsequent promise, be affected thereby. SANDERSON, J., and RHODES, J., dissenting.

SUFFICIENCY IN THE DESIGNATION OF THE DEBT TO WHICH THE PROMISE REFERS. —Such promise is not void for the want of certainty. The promise to pay "all indebtedness" must be deemed sufficiently specific to embrace the only debt which is shown to be owing.

APPEAL from the District Court of the Third District, County of Alameda.

This suit was brought against Davis and wife, as the makers of a note and mortgage, and against the other defendants as purchasers and subsequent encumbrancers of the mortgaged premises, to obtain judgment on the note and to foreclose the equity of redemption of all the defendants. The suit was dismissed as to Hathaway, and judgment was rendered in favor of Mulford, a purchaser of a portion of the mortgaged premises, as to which the plaintiff had released his mortgage, and a decree entered quieting his title. Judgment was rendered in favor of plaintiff against Davis for the amount of principal and interest on the note, payable in gold coin, and a decree foreclosing the equity of redemption of the other defendants. From this judgment and decree the defendants appealed.

The other facts in the case are stated in the opinion.

*A. M. Crane,* for Appellants.

*Patterson, Wallace & Stow,* of Counsel.

The counsel for appellants made the following points :

*First*—That upon failure to pay the interest then due, the whole debt became due by the terms of the note, on and after the 11th of February, 1862.

*Second*—That being so due, the plaintiff's right of action was then matured, and he might then have sued.

*Third*—That the Statute of Limitations commenced to run from the time he might thus have sued, and the four years' limitation elapsed and ended on the 11th of February, 1866, which was about two months before this action was commenced ; and that at the time when this action was commenced the original debt specified in the mortgage had become barred. (2 Parsons on Contracts, 370; *Hemp* v. *Garland,* 4 Q. B. 519 ; Angell on Limitations, p. 105, Ch. 12, Sec. 2.)

*Fourth*—That the paper set up in the complaint as evidence to take the case out of the operation of the statute is not sufficient evidence.

*a.* It was not intended by the parties for any such purpose, but simply and only to create a gold coin debt.

*b.* It does not admit the existence of this debt, or of any debt.

*c.* It is indefinite, uncertain, and of itself unintelligible, refers to nothing and specifies nothing, and cannot be added to or enlarged by verbal evidence *dehors,* because this would be to substitute verbal for the written evidence which the statute requires. (2 Parsons on Contracts, 349; Story on Contracts, Sec. 1014; *Rowe* v. *Kohler,* 4 Cal. 285; *Maclay* v. *Love,* 25 Cal. 367; *Smith* v. *Green,* 31 Cal. 467.)

*Fifth*—For all the reasons above stated, it is void as a gold coin contract, failing as it does to specify, "in writing," as required by statute, the debt agreed to be paid.

*Sixth*—That by reason of her coverture, Mrs. Davis' property cannot be bound by any such contract or agreement, however definite it might be ; and in addition to all the other

grounds above stated, this is conclusive as to her and her separate property.

*Seventh*— That if the two smaller notes given for interest have any validity, the mortgage can only be enforced as to them against Davis' separate property, and then only to the extent of their face, and simple interest.

*Pringle & Pringle,* for Respondent.

*First*—The note matured April 11, 1862.

Whilst it is true in this case that the creditor might have commenced an action upon the failure to pay any instalment of interest, yet this right of action was not the right of action contemplated by the contract of the parties, but was a mere privilege or option granted to one of the parties to assist in the enforcement of the contract.

The primary obligation of the note is to pay at its maturity. The clear intention of the instrument is to accord to the maker a certain period of delay, and to the holder a certain period of compensation in interest money. This is the contract.

Without doubt the stipulation which provides for an earlier maturity, is intended only to aid in the enforcement of the punctual payment of the interest—a mere accessory to the contract. A maturity, therefore, which is in violation of the express terms and of the clear intention of the contract, and which is accorded for the protection of one party against the default of the other, is necessarily the privilege or option of the party for whose protection it is accorded, as much so as if the word "option" were used. The whole note as well expresses this idea as if the word "option" itself were used.

*Second*—Moreover, if this be so—if this right of action growing out of the default of the debtor—is a mere privilege or option of the creditor, and in the nature of a penalty against the debtor, it requires an actual enforcement, and is waived if not enforced. The right is given to the creditor to secure to him the punctual payment of interest. But the receipt of interest for the whole term, is as much a part of the lender's consideration as its punctual payment. And he

will not be held to have abandoned that part of his consideration without some act or election on his part. No right of forfeiture enforces itself. (See *Arnsby* v. *Woodward*, 6 Boon & C. 524; also, *Moore* v. *Smith*, 24 Gil. 516.)

In other words, no stipulation inserted in a contract for the benefit of one of the contracting parties is forced upon his acceptance without his desire, to his actual disadvantage. The accrual of interest being a part of the note and part of the lender's consideration, is a benefit to the party, which he is to enjoy until he shall elect to stop it.

If this be so, it follows, inevitably, that the right to sue on any non-payment of interest, is not only not the main right of action contemplated by the parties to the note, but is not the right of action upon which the suit was founded. The right to sue on non-payment of interest being a mere privilege given to the creditor, and waived by non-action, was, in fact, waived by him, and was never enforced. The suit was brought upon the primary obligation or main right of action of the note, the obligation to pay at maturity. Every previous right of action accruing on successive failures to pay interest, was the mere right of forfeiture, which was waived until enforced, and was, in fact, constantly waived, never enforced.

*Third*—The statute begins to run from the time when "the cause of action accrues." The cause of action did not accrue in the intention of the statute until it was a fixed and certain cause of action. Undoubtedly, after any failure to pay interest, the receipt of interest (before maturity of the note) would have waived the forfeiture and taken away the creditor's then right of action. If a landlord receives rent after default, he certainly waives his right of forfeiting the lease. That in that case, as in this, the right of action has not actually accrued is manifest, if by the simple act of receiving rent or interest, it is lost. *The statute must not begin to run until, when started, it runs on to the end undisturbed, except by the enumerated disabilities.* Hence, it is clear that the cause of action cannot be said to have accrued in the sense of the statute, until it has accrued beyond the power of debtor or creditor to prevent it — beyond the power

of any but the disabilities of the statute itself to prevent it. No limitation can be said to have commenced against a creditor, so long as his very right to sue is uncertain. After the maturity of the note, a right of action has definitely accrued, for no receipt of interest or mere inaction of the holder can then operate to defeat it; but, before maturity, his right of action is uncertain and undetermined. Not only his own acts of waiver may defeat it, but payments of interest by his debtor may defeat or postpone it. Until the right of action is certain, beyond the power of creditor or debtor to affect it, it has not accrued.

*Fourth*—Certainly the defaulting party cannot claim that the cause of action has accrued. Could he, industriously, make default in payment of interest, and then enforce payment of the whole note? The note, therefore, is not due, because *he* cannot say that it is due; the cause of action has not accrued, because *he* cannot say that it has accrued.

If this be so—if the debtor cannot force payment upon the creditor, he cannot force the Statute of Limitations upon him. Otherwise, it might happen, as in the case of a note payable in five years, that the debtor would be actually protected by the Statute of Limitations before he had the right to pay his debt. This is the *reductio ad absurdum* of appellants' argument.

CROCKETT, J., delivered the following opinion, in which SPRAGUE, J., concurred:

The defendants, Davis and wife, being indebted to the plaintiff, Belloc, in the sum of $16,000, on the 11th day of October, 1861, executed and delivered to him their promissory note of that date, payable six months after date, with interest payable monthly, and with the following clause in the note, to wit, "and in case default be made in any payment of interest, when the same shall become due as aforesaid, then the whole amount of principal and interest to become due and payable, immediately, upon such default." On the same day, Davis and wife executed and delivered to the plaintiff a mortgage upon certain real estate which was

the separate property of the wife, and upon other real estate which was common property, to secure the payment of the note. The mortgage was duly acknowledged and certified in the form required by law for conveyances by married women of their separate property. The monthly interest which became due from February, 1862, to November, 1862, was not paid, as stipulated in the note; but, on the 28th day of November, 1862, there was paid, on account of the principal, the sum of $7,000, and all the interest up to the 11th day of December, 1862. On the 11th day of February, 1864, there was due, for interest on the debt, the sum of $1,890; and, on that day, Davis and his wife executed and delivered to the plaintiff their promissory note for that sum, payable on the 11th day of July following, with interest payable monthly, and to compound, if not paid at maturity. On the 29th day of November, 1864, there was due for interest the further sum of $1,350, for which a similar note was executed, payable three months after date, with a like provision as to interest. In neither of these notes is any reference made to the mortgage; and neither of them was paid at maturity, or at any time since; nor has any further payment been made on account of the principal. The plaintiff commenced this action on the 7th day of April, 1866, to foreclose the mortgage, and the defense relied upon the Statute of Limitations.

It will be seen from this statement that the note for $16,000 became due and payable on its face on the 11th day of April, 1862, and the action was commenced on the 7th day of April, 1866—four days less than four years from the maturity of the note; but four years and two months from the time when the first default was made in the payment of interest.

Our Statute of Limitations requires that an action to foreclose a mortgage shall be commenced within four years from the time "when the cause of action accrues." The question for our decision, therefore, is, when did this cause of action accrue, in the sense of the statute? Did the statute commence to run from the time of the first default in the pay-

ment of interest, or only on the expiration of the term of credit specified in the note, to wit, six months from its date?

The question is novel, and somewhat embarrassing; but our conclusion is, that the cause of action, within the true meaning of the statute, accrued at the expiration of the credit fixed by the note, to wit: six months after its date. The provision in the note, to the effect that in case of a default in the payment of interest, the whole amount of principal and interest shall "become due and payable immediately upon such default," is evidently in the nature of a penalty, inserted for the benefit of the creditor, and as an incentive to the debtor to stimulate him to the prompt payment of the interest, in order to avoid a forfeiture of the credit allowed by the note. Being in the nature of a penalty, inserted for the sole advantage of the creditor, it was competent for him to waive the benefits which it secured to him, as the plaintiff in this case has done, by accepting payment of the interest after default made. If the cause of action accrued, in the sense of the statute, on the first default in the payment of interest, and the plaintiff's right of action, then assumed a character so fixed and definite, that it was not in his power to waive it, as is claimed by the defendants, this strange result would follow, to wit: That if the plaintiff, on the next day after the default, had accepted payment of the interest due, he could, nevertheless, immediately after, have maintained his action to compel payment of the whole debt, on the ground that the credit had been irrevocably terminated by a default in the payment of interest for a single day, notwithstanding it had been paid and accepted on the following day. In this case, after several defaults, all the interest was paid and accepted up to the 11th day of December, 1862; and, supposing the note to have been payable five years after date, if the plaintiff, on the following day, had commenced his action to foreclose his mortgage for the principal sum, claiming that the credit had been forfeited by a failure to pay the interest at maturity, it is quite manifest he could not have maintained the action, for the reason that he had waived the forfeiture by accepting payment

after default made.    Or, to illustrate the proposition a little more forcibly, we will suppose the case of a promissory note payable ten years after date, with interest payable monthly, and with a clause that the principal is to become due on a failure to pay the interest, as in this case.    The interest for the first month is not paid precisely on the day it became due, but is paid and accepted on the following day, and thereafter, for three years, is paid punctually at maturity every month; and whilst being so paid, and without any new default, the creditor brings his action to collect the principal sum, on the ground that the credit had been forfeited by a failure to pay the first month's interest for a single day, three years before.    To hold that the action could be maintained, under these circumstances, would be repugnant to every principle of reason and justice, and shock the common sense of mankind.    But if the argument for the defendants be sound, the creditor could not only maintain the action in the case supposed, but would be obliged to institute it within four years from the time of the default, on pain of losing his entire debt by the bar of the Statute of Limitations.    We deem this to be altogether a too narrow and technical construction of the statute, which, though designed to be a statute of repose, was never intended to work such hardship as this.

We perceive no difference whatever between the principle involved in this case and those growing out of leases, containing a clause that the term shall cease, and be absolutely determined, by a default in the payment of rent.    In such cases, it is well settled that if the landlord, after the default, accepts the rent, he thereby waives the forfeiture, and cannot afterwards insist upon it; and much less will the tenant be allowed to say that he is discharged from his covenants by his own default in the payment of rent.

"It is now held in relation to leases for years, as well as those for life, that the happening of the cause of forfeiture only renders the lease void as to the lessee.    It may be affirmed, as to the lessor, and then the rights and obligations of both parties will continue without regard to the

forfeiture. (*Clark* v. *Jones*, 1 Denio R. 519; *Rede* v. *Farr*, 6 M. & S. 125.)

"The tenant cannot insist that his own act amounted to a forfeiture; if he could, the consequences would be that, in every instance of an action of covenant for rent, brought on a lease containing a proviso that it should be void on the non-performance of the covenants, the landlord would be defeated by a tenant showing his own default at a prior period, which made the lease void." (*Doe, dem. Bryan* v. *Bancks*, 4 Barn. & Ald. 409.) We refer also to the following authorities on the same point. (*Stuyvesant* v. *Davis*, 9 Paige Ch. R. 427; *Canfield* v. *Westcott*, 5 Cowen R. 270, and note; *Williams* v. *Talbot*, 16 Texas R. 1.)

These cases all proceed on the theory that the clause of forfeiture was inserted for the sole benefit of the landlord, and might be waived by him; and that the tenant would not be allowed to say that he was discharged from his covenants by his own default in failing to pay the rent. In other words, he is estopped from alleging a forfeiture caused by his own default, on the familiar principle that a party shall not take advantage of his own wrong.

These principles have a direct application to this case. The clause in the note, providing for a forfeiture of the credit on default in the payment of interest, was inserted for the sole benefit of the creditor; and he might waive it or not, at his election. By afterwards accepting the interest, he did waive all benefit from the default; and thereafter, as was said in *Clark* v. *Jones*, "the rights and obligations of both parties continued without regard to the forfeiture." The defendants are estopped from alleging that their own default had the effect to shorten the credit for which the note stipulates; and particularly when the creditor has waived the default by accepting the payment of the interest. If it were otherwise, a perfectly solvent debtor, owing a debt payable at a remote period, with interest payable monthly, or at other stated periods, might shorten the credit to the statutory time of four years by wilfully declining to pay the first instalment of interest, provided the note contained a clause similar to that in this case. Money is often loaned at

interest on a long credit, for the purposes of an investment; and in order to avoid the annoyance and hazard of changing the securities, the interest is generally lower on a long loan than on a short one; nevertheless, it is important to the lender that the interest be punctually paid; and if, with that view, he should insert in the note a clause similar to that in this case, the borrower needs only to decline to pay, even for a day, the first instalment of interest, in order to shorten the credit to four years, if the argument for the defendants be sound. This would convert the Statute of Limitations from a statute of repose into one of oppression and fraud. Instead of simply compelling the creditor to sue upon his demand within a reasonable time *after* it is due, it would enable a dishonest debtor, if his interest prompted it, to compel the creditor to take payment long *before* it is due, and thereby to escape the payment of future interest. We do not give to the statute so narrow a construction, and therefore hold that the cause of action in this case did not accrue until the maturity of the note.

We have been referred to but one adjudicated case which is claimed to be in conflict with these views, to wit: *Hemp* v. *Garland*, 4 Q. B. 519 (3 Gale & Davidson, 402), and which is found, also, in 45 Eng. Com. Law R. 519. The facts of that case were, that Garland, in settlement of an antecedent indebtedness to Hemp, agreed to pay it in thirteen quarterly instalments, with interest, and thereupon gave him a cognovit, in which it was provided, that if default should be made in the payment of any or either of the instalments, or the interest thereon, or any part thereof, Hemp should be at liberty to enter up judgment, on the warrant of attorney, for all that should then remain unpaid of the entire debt, in like manner as if all the periods for the payment of the instalments had expired by the effluxion of time. Garland paid several of the instalments, and died, leaving the remainder unpaid. After his death, an action was brought against his administrator to compel payment of the remaining instalments, and the Statute of Limitations was pleaded as a defense. On the trial, it appeared that all the instalments, except the three last, were barred by the statute; and the question was,

whether these three were also barred, because the *first* default had happened more than six years (the statutory time) before the commencement of the action, and the Court held that the whole were barred, on the ground that, under the warrant of attorney, the plaintiff might have commenced his action for the whole on the happening of the first default, and that his cause of action accrued at that time.

There is an important distinction between that case and this, in respect to the question of waiver. In the former, no such question was involved, inasmuch as it was not pretended that the plaintiff had, in any manner, waived the right of action secured to him by the first default.

If the default complained of in that case had been in respect to the payment of one or more instalments, either of principal or interest, which were afterwards paid, and were accepted by the plaintiff, the cases would have been strictly analogous. The question then would have been—as it is here—whether, after waiving the default, the plaintiff's rights would not thereafter have continued precisely the same as if no default had happened? In other words, whether the waiver of the default did not remit the parties to their former *status*, in respect to the contract and the remedies for its enforcement, and leave them, in respect to their rights under the contract and the remedies for enforcing them, precisely as they would have been if there had been no default. That case is not an authority on this point, which was in no manner involved in it. But, laying out of view the question of waiver, and assuming that, in other respects, the case of *Hemp* v. *Garland* was analogous to this, we have grave doubts whether the decision in that case could be sustained, either on reason or authority; and we are certainly not inclined to extend its application beyond the precise facts of the case.

On the whole, our conclusion is, that the plaintiff's demand was not barred by the statute; and this view of the case renders it unnecessary for us to decide whether or not there was a sufficient acknowledgment of the debt to take the case out of the bar of the statute.

The note and mortgage were made prior to the passage of

the Act of Congress of February 25, 1862, making treasury notes a legal tender for debts, and at a time when gold and silver coin were not only the sole circulating medium of this State, but the only currency which, under the existing laws, was a legal tender. The note and mortgage call only for so many "dollars," without specifying any particular kind of currency in which they are to be paid. But it is plain, beyond controversy, that it was the intention and understanding of the parties, that payment was to be made in gold or silver coin. If it had been so stipulated in the note, the intent would not have been more obvious. Under these circumstances, the plaintiff claims that he is entitled to a judgment for gold and silver coin; whilst the defendants maintain that they are entitled to discharge the debt in legal tender notes. If the question had not already been definitely settled to the contrary in this State, by repeated adjudications of this Court, I should have no hesitation in holding the Legal Tender Act to be unconstitutional and void. But, unless these adjudications shall be overruled by the Supreme Court of the United States, the question must be considered as put at rest in this State by the following cases, which hold the Act to be a valid and constitutional enactment. (*Lick* v. *Faulkner*, 25 Cal. R. 404; *Curiac* v. *Abadie*, *Id.* 502; *Kierski* v. *Mathews*, *Id.* 591; *People* v. *Mayhew*, 26 Cal. 655; *Higgins* v. *B. R. & A. W. & M. Co.* 27 *Id.* 153; *Reese* v. *Stearns*, 29 *Id.* 273; *Poett* v. *Stearns*, 31 *Id.* 78.

If, however, the Act be conceded to be valid as to all debts contracted after its passage, a grave doubt has arisen whether it can have any application to pre-existing debts. If this were an open question, it might be urged with great, and, as it appears to me, convincing force, that if a debt be contracted at a time when gold and silver coin is the only medium of circulation, and the only lawful tender for debt, the creditor cannot be forced to accept in payment, a depreciated paper currency, without impairing the obligation of the contract, and overturning well established principles of constitutional law.

In the case of *Bronson* v. *Rodes*, decided by the Supreme Court of the United States at its last term, the Court holds

that a note and mortgage made in 1851, payable "in gold and silver coin, lawful money of the United States," must be paid in coin; and that treasury notes are not a lawful tender for the debt. But the Court rests its decision solely on the express stipulation of the contract for gold and silver coin, and impliedly, if not expressly, decides, that if this stipulation had been omitted from the contract, the debt might have been discharged in legal tender notes; reserving its opinion, however, as to the constitutionality of the Act. The soundness of the distinction between contracts, calling on their face for coin, and those stipulating only for payment in dollars, at a time when the law made gold and silver the only legal tender for debts, is not very apparent. The same proposition was decided by this Court in *Higgins* v. *B. R. & A. W. & M. Co.* (*supra.*) However unsatisfactory may be the distinction maintained in these cases, between pre-existing contracts stipulating for payment in coin, and those which omit it, they must be accepted as correctly defining the law. Tested by these decisions, the note and mortgage in this case may be discharged in legal tender notes, unless the defendants have been deprived of that right, by something which has subsequently transpired. It appears in the case that in April, 1865, Davis and his wife addressed and delivered to the agent of the plaintiff, having charge of his affairs, the following note: "Agreeable to promise, we write the following: On the first day of November next, we promise to pay our indebtedness to Benjamin Belloc, Esq., in United States gold coin."

This note was signed by Davis and his wife, but was not acknowledged or proved before, or certified by any officer having authority to take acknowledgments. The complaint alleges that at the time of the execution of this instrument, the plaintiff was about to foreclose the mortgage; and the said Davis and wife, in consideration "that the plaintiff would forbear to foreclose the mortgage aforesaid until the first day of November, 1865, made and delivered to the plaintiff by Henry Barroilhet, the agent of the plaintiff," the aforesaid instrument; and it further avers that thereupon, the plaintiff did forbear to foreclose until after said first day

of November.   The finding on this point is, that the instrument was made, executed and delivered to the plaintiff's agent "for the consideration in said complaint stated."   In other words, that the consideration was an agreement on the part of the plaintiff that he would forbear to foreclose the mortgage until after the stipulated time.

It is well settled, that a forbearance to sue is a sufficient consideration to support a contract; and the instrument in question is not void for want of a sufficient consideration, even though the forbearance to sue was the only consideration.   But it may well be doubted whether there was not a sufficient consideration also founded on the moral obligation which the parties were under to pay in gold coin.   When the note and mortgage were made, gold and silver were the only circulation in this State, and the only lawful tender for debts; and it was evidently the understanding of the parties that payment was to be made in coin.   A subsequent express promise to pay in gold coin was only an agreement in express terms to do what they had before, by implication at least, undertaken to do, and what they were certainly under a moral obligation to do.   But it is unnecessary to decide this point, inasmuch as the forbearance to sue was a sufficient consideration to support the agreement.   The promise was therefore obligatory on Davis.   But his wife was not bound by it, for the reason that, being a married woman, she was incapable in law of contracting a personal obligation, or binding her estate, except by an instrument in writing, acknowledged and certified as required by the statute. (*Smith* v. *Greer*, 31 Cal. 476; *Maclay* v. *Love*, 25 *Id.* 367; *Rowe* v. *Kohle*, 4 *Id.* 285.)

If this new promise was obligatory on her or her estate, it would have the effect to change materially the original express contract, and to increase the burden on her property, by subjecting it to sale for payment of the debt in coin instead of legal tender notes.   It would incorporate into the original contract a new and material element, seriously affecting her rights; and if she had no capacity in law, as she evidently had not, to bind herself in the original note, it is not easy to perceive how she could bind herself by con-

senting to a modification of it in a matter of substance. If it be claimed that the new promise must be deemed in equity a modification by her of the mortgage, the answer is, that it was not acknowledged or certified in such manner as to be obligatory in law. That the modification would have been material, can admit of no doubt. We know as a part of the history of the time, that legal tender notes always have been, and yet are, of much less value in the market than gold. We cannot assume to be ignorant of a notorious fact, which is daily published in every newspaper in the land, and is known to the whole community.

The new promise was therefore void as to the wife, and could not vary the legal effect of the mortgage, so far as it operated on her separate estate.

It is claimed, however, that it is void for uncertainty as to the husband, because it specifies no particular debt, and does not, in terms, refer to the note and mortgage. But this point is not tenable. There is no proof that Davis or his wife were, in any manner, indebted to the plaintiff except on the note and mortgage; and the promise to pay "all our indebtedness" to him must be deemed to be sufficiently specific to embrace the only debt they owed him. But the defendants insist that even though the new promise be obligatory on Davis personally, it can, at most, only vary the terms of the *note* as to him, but cannot enlarge or vary the mortgage so as to render it a security for the payment in coin, even out of the common property included in the mortgage. But the mortgage is only an incident to the debt; and if Davis, by a valid contract, agreed that the debt should be paid in coin, the same condition would attach in a Court of Equity to the mortgage, so far as it affected the interests and estate of Davis himself, but not in such manner as to prejudice the rights of the wife, or subsequent purchasers or encumbrancers. The burden on the estate of the wife cannot be increased by any act of the husband subsequent to the execution of the note and mortgage; and subsequent purchasers and encumbrancers, whose rights have intervened between the date of the original

transaction and the new promise by Davis, have a right to stand on the note and mortgage as originally made. After their rights vested, Davis had no power to impair them, or to render them less valuable by stipulating with the plaintiff that the mortgage debt, which before, by virtue of the Legal Tender Act, was payable in legal tender notes, should be paid in gold coin. They, as well as the wife, were entitled to have the securities marshalled, and to have the common property, which is included in the mortgage, first subjected to the payment of the mortgage debt; and it is obvious that if Davis, as against them, had the power to convert the debt, as against the common property, into a judgment for coin, it would, to the extent of the difference in value between gold coin and legal tender notes, increase the burden on the other property. This, Davis had no power to do.

Our conclusion is, that the Court erred in directing the property, or any part of it, to be sold for gold coin; and for the reasons already stated, neither Mrs. Davis, or the subsequent purchasers or encumbrancers, are bound by the two promissory notes executed by Davis for the accrued interest in gold coin, nor for compound interest thereon. But if the whole mortgaged premises should fail to satisfy the mortgage debt and interest, there should be a personal judgment against Davis for the deficiency in gold coin.

Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

SAWYER, C. J., also delivered the following opinion:

I concur in the judgment, and generally in the reasoning of Mr. Justice CROCKETT, by which his conclusions are established; but I do not wish to be understood as assenting to those portions of the opinion which, while recognizing as authority, the former decisions of this Court referred to, suggest doubts as to their soundness upon the questions therein decided, arising under the Acts of Congress making treasury notes a legal tender in payment of debts.

SANDERSON, J., delivered the following opinion, in which RHODES, J., concurred :

In the conclusion reached by a majority of the Court upon the first point considered in the opinion of Justice CROCKETT, I concur.   From the conclusion reached upon the second point, I dissent, upon the authority of *Poett* v. *Stearns* (31 Cal. 78.)   So far as the principle involved in the second point is concerned, I am unable to distinguish between that case and this.   No attempt has been made by my associates to distinguish between them, and I must, therefore, consider this case as overruling that, although it is not so declared in terms.    I was entirely satisfied with the judgment in *Poett* v. *Stearns* at the time it was rendered, and I have since seen no cause to doubt its soundness.   For the reasons stated by Justice Shafter in that case, I think the plaintiff in this is entitled to a judgment in coin as against all the defendants.