W. A. FOSTER, AMINISTRATOR OF JOHN A DAVIS, v. I. C. DAVIS ET AL.

(Filed 15 May, 1918.)

1. **Principal and Surety—Husband and Wife—Bills and Notes—Extension of Time—Release.**

   Where the wife mortgages her lands to secure a personal debt of her husband, an extension by his creditor of the time of payment of the mortgage note, without her consent, will release the wife, as surety, and discharge her property from liability.

2. **Same—Mortgages.**

   Where a wife has signed as surety on her husbands note, and has mortgaged her separate property to secure it, and thereafter the husband gave the creditor a note in a larger amount, inclusive of the former note, and later maturing, the creditor may not successfully maintain his action against the principal on the joint note, until the maturity of his later one.

3. **Same—Evidence—Trials—Questions for Jury.**

   A purchaser of a pair of mules gave his note for them, in the absence of his wife, and thereafter she and the vendor obtained a mortgage on her lands, voluntarily given, to secure their joint note in the same amount and for the same purpose. Thereafter the husband, with the consent of the vendor, but without the knowledge of his wife, traded the mules, and again swapped, paying the vendor the boot which he had received, obtaining a credit on a note he had given in a larger amount, including that of the joint note, and later maturing. *Held*, between the original parties it was competent to show that the wife signed as surety and sufficient to release her, as such, by the extension of time given to her husband.

APPEAL by defendants from *Cline, J.,* at the November Term, 1917, of DAVIE.

This proceeding was commenced for the purpose of selling the lands of John A. Davis, deceased, to make assets, but Foy & Shemwell were permitted to be made parties to enable them to claim the share of Mrs. Ida Walser, one of the heirs, under a mortgage, subject to the debts of John A. Davis, and the whole controversy relates to the mortgage and the debt secured thereby.

A jury trial was waived, and the issues involved tried before a referee, who made the following findings of fact:

"2. I find as a fact that on 22 May, 1915, the defendant C. H. Walser purchased of the interpleaders Foy & Shemwell, in Lexington, N. C., a pair of gray mules, for which he agreed to pay the sum of $625, and executed the attached written instrument marked 'Defendant Walser's Exhibit A,' and asked to be taken as part of this report.

"3. That on the date above mentioned, 22 May, 1915, C. H. Walser had been working in Lexington, N. C., for some weeks, and that his wife, Ida Walser, lived in Davie County, N. C., about 20 miles from Lexington, N. C., on the land belonging to her father's estate. That

the said C. H. Walser bought said mules in Lexington and signed the paper-writing above referred to and marked 'Defendant Walser's Exhibit A,' while in Lexington, and after signing said paper-writing he and an agent of Foy & Shemwell came over to the house of C. H. Walser and his wife, Ida Walser, in Davie County, and the said Ida Walser and C. H. Walser executed and delivered to Dermot Shemwell for the firm of Foy & Shemwell, on 22 May, 1915, the attached note and mortgage, as further security on the pair of gray mules, said note and mortgage marked 'Foy & Shemwell's Exhibit A,' and is hereto attached and made a part of this report.

"4. I find that at the time of the execution of the above-named note and mortgage by Ida Walser and husband, C. H. Walser, that Ida Walser was one of the three children and heirs at law of John A. Davis, deceased, and that she at the time of the execution of said note and mortgage owned a one-third undivided interest in the land of John A. Davis, deceased, and described in said mortgage, subject, however, to a mortgage on said land held by one Williams and the debts due by the estate of John A. Davis, deceased, mentioned in the pleadings.

"5. I find that on 30 August, 1915, the said C. H. Walser traded the pair of gray mules purchased on 22 May, 1915, above described, to Foy & Shemwell for one pair of black mules, and agreed to pay Foy & Shemwell $150 difference in said trade; that the said C. H. Walser did not pay Foy & Shemwell any money, but exchanged the gray mules for the black mules and gave to Foy & Shemwell a note or paper-writing for $775, and that said note of $775 consisted of the $625 secured by the note and deed of trust executed to Foy & Shemwell by Ida Walser and her husband, C. H. Walser, on 22 May, 1915, and the $150 that the said C. H. Walser was to pay Foy & Shemwell in the exchange of the gray mules for the black mules. That this trade was made in Lexington, N. C., and the said Ida Walser was not present or consulted about making said trade by Foy & Shemwell. That the defendant C. H. Walser executed and delivered to Foy & Shemwell the hereto attached paper-writing at the time the trade was made for the black mules; that said written instrument, marked 'Defendant Walser's Exhibit B,' is made a part of this report.

"6. That on 4 February, the said C. H. Walser, with the consent and knowledge of Foy & Shemwell, traded the pair of black mules to Frank Jones for a pair of bay horses, and received in said trade from Frank Jones the sum of $200, which was turned over by the said C. H. Walser to Foy & Shemwell as part payment on the note of $775 above mentioned. That Ida Walser was not consulted and took no part in said trade. That Foy & Shemwell surrendered to C. H. Walser the paper-writing of $775, marked 'Defendant Walser's Exhibit B,' on the black

mules and gave Frank Jones the said black mules free and clear from all encumbrances. That C. H. Walser at said time executed a paper-writing to Foy & Shemwell for the sum of $610.94, which paper-writing is hereto attached and marked 'Defendant Walser's Exhibit C,' and made a part of this report.

"7. That Ida Walser willingly signed the note and mortgage given Dermot Shemwell for Foy & Shemwell, but she signed same as surety for her husband, C. H. Walser; that the gray mules, black mules, and bay horses were used by C. H. Walser on the land of Ida Walser; that the said teams were used in tilling the land, hauling wood and timber, which wood and timber was sold from the land of Ida Walser; that the money earned by said teams was not paid to Foy & Shemwell, but was used by C. H. Walser and Ida Walser in the support of themselves and their family.

"8. I find that in December, 1916, after the note for $610.94 executed on 4 February, 1916, had become due and payable, the interpleaders, Foy & Shemwell, issued claim and delivery papers, took possession of the bay horses and, after advertising them according to law, sold them at public auction in Mocksville, N. C., when and where J. F. Smith purchased the said horses for the sum of $225. That the said sale was conducted in a fair manner, there being a number of bidders at said sale, but that J. F. Smith bought said horses as the agent of Foy & Shemwell. I further find that $225 was the market value of the bay horses at the date of sale.

"9. I find that there is still due Foy & Shemwell the sum of $417.66, the same being the $610.94 as evidenced by a note of 4 February, 1916, with interest from 4 February, 1916, less $225, the price of the bay horses brought when sold at public auction."

The referee held as matter of law that the land of Mrs. Walser was discharged from the operation of the mortgage.

Exceptions were filed by Foy & Shemwell, which were overruled, and judgment rendered confirming the report of the referee. Foy and Shemwell appealed.

The assignments of error chiefly relied on in the brief are (1) that there is no evidence to support the finding that Mrs. Walser occupied the relation of a surety to the transaction; (2) that if she was a surety, the subsequent dealings did not discharge her.

*A. T. Grant, Jr., for appellant.*
*Hastings, Stephenson & Whicker for appellee.*

ALLEN, J. In our opinion there is ample evidence to sustain the finding of fact that Mrs. Walser executed the mortgage conveying her

interest in the land of her father as security for the debt of her husband.

The evidence shows that the mortgage secures a note for $625; that the note was for the purchase price of two gray mules; that the mules were bought by the husband at Lexington in the absence of the wife; that the husband signed an instrument at Lexington promising to pay $625 for the mules, in which the title was retained, and that the parties then went to the home of Mrs. Walser, 20 miles distant, and she and her husband signed another note for $625 of the same tenor as the promise to pay of the husband, and representing the same debt, and then executed the mortgage.

The husband testified: "I bought a pair of gray mules from Foy & Shemwell." . . . "I was at work in Lexington when I made the trade, and my wife knew nothing about it." And the subsequent conduct of Foy & Shemwell in agreeing that the husband might trade the gray mules for the black ones without the knowledge or consent of the wife was a clear recognition of the ownership of the gray mules by the husband, that the trade was his, and the debt, in whatever form evidenced, his debt.

If so, the wife promised to pay the debt of her husband when she signed the note, and was a surety, and it was competent to prove the relationship by parol as between the parties, although she appeared to be a principal on the face of the note. *Williams v. Lewis,* 158 N. C., 574.

The same relationship would also have existed, so far as the property conveyed in the mortgage is concerned, if she had not signed the note, as "It is settled by abundant authority that 'where a husband mortgages his property for his debt, and in the same mortgage the wife conveys her own separate property as security for the same debt, her property so conveyed will be treated in all respects as a surety . . . and will be discharged by anything that would discharge a surety or guarantor who was personally liable.' 1 Brandt on Suretyship, par. 32; *Cross v. Allen,* 141 U. S., 528; *Spear v. Ward,* 26 Cal., 659; *Gahn v. Niemcewieg,* 11 Wend., 312; *Bank v. Burns,* 46 N. Y., 170; Bishop Law of Married Women, 604; Jones Mortgages, 114; *Gore v. Townsend,* 105 N. C., 228; *Purvis v. Carstarphen,* 73 N. C., 575" (*Hinton v. Greenleaf,* 113 N. C., 7), and the same principle applies when no part of the husband's property is covered by the mortgage, and it simply conveys the property of the wife to secure the debt of the husband. *Smith v. Loan Assn.,* 116 N. C., 73-102; *Edwards v. Ins. Co.,* 173 N. C., 617.

We must then deal with the wife and her property as a surety, and it is not contended that forbearance or extension of time to the principal does not discharge the surety (*Forbes v. Shepherd,* 98 N. C., 115; *Chemical Co. v. Pegram,* 112 N. C., 620), and that there has been an exten-

sion of time and a release of securities held by the principal without the consent of the surety seems clear.

The original debt of the husband was $625, the price of the gray mules, and there was only one debt, although two papers were executed, each in the sum of $625. These papers were due 1 October, 1915, and on 30 August, 1915, the husband traded the gray mules to Foy & Shemwell for a pair of black mules, agreeing to pay $150 boot money, and executed his note to Foy & Shemwell for $775, in which was included the debt of $625, payable 15 November, 1915.

Again on 4 February, 1916, the husband, with the consent of Foy & Shemwell, traded the black mules to one Jones for a pair of bay horses and $200, and on the same day the husband paid said sum of $200 to Foy & Shemwell and executed a new note for $610.94, payable 15 March, 1916, which included the balance due on the debt of $625. These transactions were without the knowledge or consent of the wife and extended the time of payment to the principal from 15 October, 1915, to 15 November, 1915, and then to 15 March, 1916.

If the principal had been sued on the note he and his wife signed, he could have successfully defended upon the ground that the debt was covered by the new notes, and that the creditor had agreed not to demand payment until the notes became due. We therefore conclude there is no error in the ruling of his Honor holding that there has been an extension of time, and that this discharges the surety and the land.

The case of *Fitts v. Grocery Co.,* 144 N. C., 463, is easily distinguishable from this, as in that case the mortgage executed by the wife was for the purpose of giving continuing credit to the husband, and the monthly transactions were such as were contemplated by the parties.

Affirmed.