## HOME OWNERS' LOAN CORPORATION v. WASHINGTON.

No. 6792.   Decided August 10, 1945.   (161 P. 2d 355.)

See 10 C. J. S., Bills and Notes, sec. 251; 14 Am. Jur., 14.

*D. H. Oliver*, of Salt Lake City, for appellant.

*Samuel J. Carter*, of Salt Lake City, for respondent.

TURNER, Justice.

This is an appeal from a judgment of foreclosure in favor of the Home Owners' Loan Corporation and against the respondent herein, Mary Washington. In 1934 Mary Washington executed her note for $1,600 and to secure the payment of the note she executed a mortgage upon her home property situated in Salt Lake City.

The note is a regular instalment note providing for monthly payment in the sum of $12.65. These payments were later increased to $14.96 because of improvements made in accordance with a supplemental agreement. The note provides that extra payments may be made at any time and interest would be charged only on the unpaid balance. It then provides as follows:

"It is agreed that time is of the essence of this contract and that in the event of default in payment of any instalment for a period of ninety days the holder of this note may, at its option, declare all the remainder of said debt due and collectible, and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time. In the event of default in the making of any payments herein provided and in the event the whole of said debt is declared to be due, interest shall accrue at the rate of 6 per centum per annum. In the event of default in payment of this note and if the same is collected by an attorney-at-law, I, or we, agree to pay all costs of collection, including a reasonable attorney's fee not exceeding 10 per centum."

Although the note is short we see no need of copying it verbatim.

In addition to these provisions of the note, there are two paragraphs of the mortgage which call for our consideration. The last complete paragraph on page two of the mortgage, under division No. 3, is as follows:

"In the event that said taxes, assessments, charges, expenses, or encumbrances, agreed to be paid by Mortgagor, be not so paid, or said buildings not so insured, in said insurance policies with said mortgage clause attached, or said adverse claims against said property not paid, settled or removed, then the Mortgagee, being hereby made sole judge of the legality thereof, may, without notice to Mort-

gagor, pay such taxes, assessments, charges, expenses or encumbrances, obtain such insurance policies and pay or settle or cause to be removed, by suit or otherwise, all such adverse claims, and every such payment by the Mortgagee shall be payable on demand, and shall bear interest from date at the rate of six per cent per annum."

Paragraph 10 is as follows:

"If default be made in any agreement herein contained, or in the payment of any money hereby secured, or in the payment of any special or general taxes or assessments when due, the mortgagee, its successors or assigns, may declare the entire indebtedness due and foreclose this mortgage, and may enter upon the property, collect all rents, income and profit thereof, same being pledged as additional security for said indebtedness."

In August, 1942, the Home Owners' Loan Corporation, which shall hereafter be referred to as the Corporation, filed an action in the Third District Court of Salt Lake County seeking foreclosure of this note and mortgage. Mary Washington, the debtor, filed an answer denying that she was in default under the terms of the note and mortgage. Issue was joined and in September, 1943, the court found that at the time of commencement of the action there was only $33.54 due and owing and that no part of this amount had been due and owing for a period of ninety days prior to the commencement of the action. The court denied foreclosure but rendered judgment in favor of the Corporation for $33.54. We cannot go back of this.

The record also shows that on or about July 15, 1942, prior to the filing of the action, Mary Washington sent an instalment payment to the Corporation which it received at its offices in San Francisco, Cal. The payment, however, was refused and returned by the Corporation to the debtor. Had this been accepted by the Corporation, there would have been a delinquency of only $18.54 at the time the foreclosure action was commenced. And had the debtor sent a $15 payment for August, 1942, which she might have sent but for the refusal of the Corporation to accept the instalment tendered in July, 1942, there would have been a de-

linquency of only $3.54 to justify the Corporation's commencement of its foreclosure suit.

The record in this case discloses that the debtor in the first foreclosure action at the time of trial but prior to the introduction of any evidence, offered the Corporation in open court the sum of $338.93 in payment of all instalments due and owing to the date of the offer and in settlement of any and all other obligations then due according to the provisions of the contract. This offer, however, was not to cover court costs or attorney's fee as the debtor maintained that she was not in default at the commencement of the foreclosure suit. As stated, the tender was made in open court and the money was deposited with the clerk of the court.

The record also discloses that after the court had announced its decision and prior to the signing of the findings of fact, conclusions and decree, Attorney Oliver for the defendant offered to pay Mr. Carter, attorney for the Corporation, $33.54, the amount found owing by the court, in the first suit, together with $225 for fifteen monthly instalments at $15 a month. Mr. Carter's testimony regarding this is as follows:

"I told Mr. Oliver, as I recall the conversation, that if he paid what was due plus the costs of the action, including attorney's fees, why, we would settle or I thought the corporation would settle it; I would have to submit anything to the corporation. At that time I had no authority to accept any money on account."

The transcript shows that Mr. Oliver withdrew the money from the clerk's office after it had been refused in court and took the money with him to Mr. Carter's office and offered to pay Mr. Carter, but the latter refused to accept any money unless Mr. Oliver paid the court costs and attorney's fee in the case just completed by the trial court, wherein the plaintiff was denied costs and attorney's fee by the court.

The record contains some other matters which must be borne in mind. Mr. Milton J. Terrell, who was called by the

Corporation, said he was Assistant Regional Treasurer and Cashier of the Home Owners' Loan Corporation. On rebuttal, referring to the time when the Corporation refused to accept and returned the payment tendered by Mrs. Washington, he was asked the question,

"And you haven't billed any amount of any kind whatsoever to Mrs. Washington since that time, have you?"

His answer was,

"No, the account was authorized foreclosed."

In the second case the trial court admitted as an exhibit a receipt made by the clerk of the court for $408.54 tendered in court in the trial by Attorney Oliver. The record discloses that besides this, Mr. Oliver offered in open court to pay the plaintiff an additional sum of $41.08 in full settlement of defendant's obligation to the Corporation to that date, but this offer was not to include court costs and attorney's fee. The tender was refused.

Counsel for appellant had made fourteen assignments of error. They do not require separate attention. The problems of this appeal are not factual. Those raised relating to the admissibility of evidence and the court's refusal to strike or admit evidence give us little concern. We are primarily concerned with the effect of the tender made by defendant at the time of the first foreclosure trial and immediately thereafter, just prior to the signing of the court's findings, conclusions and decree. We are concerned with the powers, duties and obligations of an attorney employed to collect a note secured by mortgage under circumstances such as are involved in this case.

The record relative to the first tender is positive and complete. Counsel for defendant, prior to the introduction of any evidence, tendered in open court the sum of $338.93. The sum offered was sufficient to cover every obligation of the defendant under the contract, including taxes and assessments paid by plaintiff or which had become due and payable. The preponderance of evidence is that counsel for

the defendant made a second offer to pay in full the obligations of defendant after the trial court had determined that there was only $33.54 due at the time the action was commenced and that no part of the amount owing was in default for a period of ninety days.

The case presents this question: Was the defendant, after having made tender, which was refused, under any further obligation to plaintiff before plaintiff gave evidence of willingness to accept the amount owing or until plaintiff made request or demand for payment?

We might state the problem another way: Must a debtor under an instalment obligation continue to offer the monthly instalments when the creditor has refused and continues to refuse to accept payment? Again, is there any legal justification or need for tender of an instalment of $15 when the creditor has refused and continues to refuse to accept tender of $338.93 to make the contract current?

It is evident that after the two refusals to accept the money, defendant did not leave the money with the clerk of the court or with a bank where it could have been accepted by plaintiff. However, it appears certain that defendant kept the money on hand to pay plaintiff any time it requested it or plaintiff showed a willingness to accept payment. This conclusion is justified where the defendant went into court when the second suit was commenced and again tendered sufficient money to cover every obligation she then owed under the contract.

This being the case, it is apparent that it would have been absolutely futile for the defendant to have sent other payments to the Corporation. As the account was closed by the company and placed in the hands of the attorney, and inasmuch as the attorney refused tender in open court and again within a few days refused a second tender unless the defendant offered payment of costs and attorney's fees, we must conclude that the Corporation by its acts and the acts of its attorney refused a valid tender and insisted that it be paid costs and attorney's fees to which it was not entitled.

Counsel argues that he was not empowered to accept settlement. He testified he would recommend acceptance of tender if costs and attorney's fees were included, but we must remember the account was in his hands for collection. It surely is unusual for both corporation and counsel to deny authority to accept a valid tender. Yet such is the case. If there be any doubt of this, remember that the Corporation refused to accept and returned the payment offered in July 1942, and after that date never reopened the account.

An attorney employed to foreclose a mortgage is employed to collect the debt for which the mortgage is given as security. The attorney, while the action is pending in court, has definite powers, duties and responsibilities. He represents the client in court. He speaks for the client. If he does not care to think and act for the client, which he is usually employed to do, it is his duty to convey the situation to the client for instructions. The relationship of attorney and client does not permit one to escape the common and ordinary responsibilities involved.

A further argument of counsel for plaintiff is that after the tender was refused, the defendant again failed to pay and became in default, which justified the commencement of the second action from which this appeal is taken. And counsel goes further and says the defendant has never offered to pay the entire indebtedness.

There are times when merely to ask a question we find the answer to our principal problem. Consider this: Can a debtor be charged with failure to pay an obligation and be held in default when it appears with absolute certainty that the default complained of is the result of the creditor's failure to accept payment in accordance with the terms of the contract and in accordance with the findings of a trial court of record, whose jurisdiction was invoked by the creditor's own action? We think not. The question makes the answer to the primary problem obvious.

By the great weight of authority, one who tenders that which is due and owing prior to the commencement of suit cannot be held for costs or attorney's fees. *Brunswick Realty Co.* v. *University Inv. Co.,* 43 Utah

75 at pages 88, 89, 134 P. 608. See also 52 Am. Jur. 244, § 40.

Naturally, then, to avoid payment of costs and attorney's fees on an instalment note where in case of default the holder may declare the entire principal and accrued interest due and payable, the debtor must tender the entire amount if, by reason of default, the holder has declared the full amount due and payable. However, if suit is prematurely brought, as the first foreclosure action mentioned herein, then the law requires tender only of the amount due and owing without benefit of forfeiture and without court costs or attorney's fees.

The law relative to tender under contracts, which provides that in case of default the holder has the option to declare the whole amount due, is well set forth in 52 Am. Jur. 245, § 41, which is as follows:

"Under a contract which provides that any default in the payment of the interest or an instalment of the principal when due shall give the obligee an option to declare the whole amount due, the general rule is that a tender of payment of the overdue principal or interest before the option to declare the whole debt due has been exercised cuts off the right to exercise the option. *Stansbury* v. *Embrey*, 128 Tenn. 103, 158 S. W. 991, 47 L. R. A., N. S., 980; *Weinberg* v. *Naher*, 51 Wash. 591, 99 P. 736, 22 L. R. A., N. S., 956. This is so because the debt does not become due on the mere default in payment, but by affirmative action by which the creditor makes it known to the debtor that he intends to declare the whole debt due."

The provisions of the note and mortgage require payment by the Corporation of taxes and assessments and demand for same before it can declare a forfeiture. The Corporation failed to comply with these provisions and was not in a position to declare the entire sum due and payable.

We hold it was the duty of the attorney to have accepted the tender made in the first foreclosure suit or to have advised the client that a valid tender had been made, instructing the Corporation that it should accept the tender and reinstate the contract, and where the debtor kept the money on hand so as to pay the obli-

gation in case demand was made and did make tender in court prior to the introduction of evidence in the second foreclosure action, we hold the second action was unnecessarily brought and the plaintiff is not entitled to foreclosure and is not entitled to costs or attorney's fees.

The judgment of foreclosure is reversed and the cause remanded with directions to recast the findings, conclusions and decree to conform to this opinion, and to permit the defendant to reinstate the note and mortgage by paying up current the amount due, excluding attorney's fees and costs below. Costs on appeal to appellant.

LARSON, C. J., and McDONOUGH, WADE, and WOLFE, JJ., concur.