[Civ. No. 24042. Second Dist., Div. Two. Dec. 2, 1959.]

SALLY BISNO et al., Appellants, v. ROSE SAX, as Special Administratrix, etc., et al., Respondents.

Morris E. Cohn for Appellants.

Ted T. Ward for Respondents.

ASHBURN, J.—Action to enjoin trustee's sale under trust deed and for declaratory relief. Plaintiffs Sally Bisno and Alexander Bisno appeal from the judgment.

They are the makers of a note for $34,000 dated January 9, 1951, payable in installments of $250, principal and interest, on the first of each month; the note is secured by a trust deed upon appellants' Beverly Hills home. The payee and beneficiary was Lillian Friedland who died before the foreclosure proceeding was initiated. Defendant Rose Sax was appointed special administratrix of the Friedland estate and has acted as such throughout this controversy.

The Bisnos defaulted upon certain monthly payments and defendant Sax delivered to the trustee, Bank of America National Trust and Savings Association, a "Notice of Default and Election to Sell under Deed of Trust" which the trustee recorded on May 1, 1958, as required by section 2924, Civil Code. This notice was dated April 10, 1958, and specified as the default nonpayment of the installment of principal and interest due February 1, 1958, and "all subsequent monthly installments of principal and interest due . . . not paid when due and . . . still unpaid." It further says: "That by reason thereof, the undersigned, the present beneficiary under such Deed of Trust . . . does hereby declare said indebtedness and all sums secured by said Deed of Trust immediately due and payable; and has elected to cause the property described in said Deed of Trust above referred to . . . to be sold in accordance with the provisions thereof, to satisfy the obligations secured thereby." No mention is made of the beneficiary's claim of $500 as an amount incurred by her in the protection

of her rights as beneficiary of the trust deed, hereinafter discussed. Alexander Bisno on May 8th inquired of the trustee as to "[w]hat would be the amount including interest and expenses that will be due you say, in about three months from now?" On the next day the trustee advised him of "[t]he amounts including interest and expenses that could be paid on or before August 1, 1958," itemizing (in part) as follows: "(1) Installment of principal and interest due February 1, 1958, of $250.00 per month, or payments for February 1 to May 1 amount to $1,000.00 (2) Legal charges by Ted T. Ward, attorney 500.00." The same letter said that Mr. Ted Ward, the attorney for the beneficiary, stated he would require "before the loan is re-instated" payment of taxes which, as shown by title report, amounted to $616.86 plus penalty. On July 31, Mr. Bisno tendered to the trustee the sum of $1,173.58 as the amount necessary to reinstate the trust deed and avoid a trustee's sale. The tender was rejected as insufficient. It is clear that Bisno knew that to be the fact. In a letter of August 5, 1958, to Mr. Myron E. Wisch of Chicago (who apparently represented the holder of a second lien) Bisno said: "This payment just covered the bare amount asked for by the Bank of America in their letter to me dated May 9, 1958. However, there are other payments that should be made to bring this account up to date." This last sentence referred to payments due in June and July, according to Bisno's testimony.

The situation at the time of tender was that the $250 payments for March, April, May, June and July were delinquent, a total sum of $1,250. The notice of default specified February, March and April. But the February payment had been made to Mrs. Friedland during her lifetime through a check of February 3, 1958, payable to her order, which was cashed on the 17th day of that month. So the February installment was not delinquent at the time of declaration of default or at the time of Bisno's tender. However, it was necessary in order to cure the existing defaults under the trust deed that the trustor pay, within three months after recording notice of default (i.e., before August 1), "the entire amount then due under the terms of such deed of trust . . . and the obligation secured thereby . . . other than such portion of principal as would not then be due had no default occurred. . . ." (Civ. Code, § 2924c.) Patently, a tender of $1,173.58 would not be sufficient to cure a $1,250 default.

In addition to that sum taxes in the amount of $674.88 were also in default.

Appellants assert that the tender was refused because it did not include the $500 attorney fee claimed by Mr. Ward for services rendered the beneficiary Sax in the bankruptcy court. Mr. Bisno had been in bankruptcy since April 5, 1956. The encumbered property had belonged to plaintiff wife, Sally Bisno, since July, 1954. Mr. Ward had rendered some services in the bankruptcy court which are claimed to have resulted in an order releasing any possible rights of the bankruptcy trustee in the subject property and granting permission to proceed with foreclosure. The notice of default did not mention this claimed attorney fee. The statute (Civ. Code, § 2924) specifies that the notice and election shall contain ''a statement that a breach of the obligation for which such mortgage or transfer in trust is security has occurred, and setting forth the nature of such breach.'' The statute must be strictly followed. (*Cf.* 34 Cal. Jur.2d, § 455, p. 130; *Kleckner* v. *Bank of America,* 97 Cal. App.2d 30, 33 [217 P.2d 28]; *Hayward Lbr. & Invest. Co.* v. *Corbett,* 138 Cal.App. 644, 650 [33 P.2d 41]; 37 Am.Jur., § 664, p. 115.) Hence failure to include the amount of the claimed attorney fee in Bisno's tender would not render it insufficient; but, as above shown, the tender was defective in that it did not include all installments of principal and interest then delinquent.

Appellants argue that ''defendant's acceptance of all delinquent payments constituted an election not to proceed with the foreclosure.'' The complaint was filed on September 10, 1958. On September 23d a judge other than the trial judge granted a preliminary injunction against the trustee's sale, conditioned upon plaintiffs' payment to defendants of the following items: Monthly installments due on the 1st of March to September, 1958, inclusive; all delinquent real property taxes; the sum of $173.58 to apply on trustee's fees and expenses; also that ''[p]laintiffs continue to pay, when due, all future monthly payments on said note, and real property taxes and assessments which shall accrue and become payable during the continuance of this Preliminary Injunction.'' Trial was had on December 5, 1958, and judgment entered January 2, 1959. It dissolved the preliminary injunction. At the trial counsel stipulated that plaintiffs had paid, pursuant to the preliminary injunction order, ''[t]he sum of $1,925, in favor of the defendant Rose Sax; the further sum of $674.88 as

and for all delinquent taxes and penalties; and the further sum of $750, consisting of three additional monthly payments of $250 apiece, representing the months of October, November and December"—with the qualification that the December payment was not made until the 2d of the month, though due on the 1st. In this connection counsel for defendants Sax and Bank of America said: "[T]hat the payment which was due on or before December 1, 1958, was not accepted, it was a late payment, and the check is now being returned to the plaintiffs as a late payment, and let the record indicate that." It is obvious from this that the check had been held from December 2d until time of trial on December 5th and it is not shown that there had been any previous objection to the short delay in payment. The property had been purchased by the Bisnos for $45,000 and they had paid $11,000 in cash and given the purchase money trust deed for $34,000 which is the one now under consideration. At the time of trial that lien had been reduced to approximately $20,000, according to Mrs. Bisno's testimony, thus creating an equity of $25,000. Appellants' opening brief says the unpaid balance of the debt was $22,000, which would make the equity $23,000 instead of $25,000. All payments due before December 1st had been made, as both sides concede. If there was any existing default at the time of trial it grew out of the one day delay in making the December payment.

But one day's delay in making the December 1st payment did not effect a default, for time is not declared by the note or trust deed to be of the essence. Section 1492, Civil Code, provides: "Where delay in performance is capable of exact and entire compensation, and time has not been expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due, but without prejudice to any rights acquired by the creditor, or by any other person, in the meantime." *Katemis* v. *Westerlind*, 120 Cal.App.2d 537, 543 [261 P.2d 553]: "The general rule in equity is that time is not of the essence unless it has been made so by its express terms or is necessarily so from the nature of the contract. (Williston on Contracts, vol. III (rev. ed. 1936), p. 2385.) In *Miller* v. *Cox*, 96 Cal. 339 [31 P. 161], it is stated that the intent to make a particular date, or time, 'the essence of the contract must be clearly, unequivocally and unmistakably shown by an express declaration. . . .

In order to render time thus essential, it must be

clearly and expressly stipulated that it shall be so; it is not enough that a time is mentioned during which or before which something shall be done [citations.]' (P. 345.) ▓▓▓ This language . . . is in consonance with the modern view that valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement will work injustice after a delayed tender. (*Cockril* v. *Boas,* 213 Cal. 490 [2 P.2d 774] ; *Mathews* v. *Davis,* 102 Cal. 202 [36 P. 358].)'' See also *Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 250 [270 P.2d 563] ; 12 California Jurisprudence 2d, section 162, page 380.

▓▓▓ The note and trust deed now before us evince an intent that time shall not be of the essence. No action other than foreclosure can be brought upon a trust deed note (*Brown* v. *Jensen,* 41 Cal.2d 193, 195-196 [259 P.2d 425] ; 34 Cal.Jur.2d, § 430, pp. 101-102), and both of these instruments contemplate a foreclosure in the customary manner—sale under the power conferred upon the trustee. This means the recordation of a notice of default and a waiting period of three months (Civ. Code, § 2924), during which the trustor may cure his default and reinstate the obligation and deed of trust, thus necessitating the discontinuance of any proceeding looking to a foreclosure sale (§ 2924c). All this is irreconcilable with any concept of time as the essence.

The beneficiary received the covering check on the 2d day of December, held it until after the trial had commenced on the 5th and then sought to convert the delay in payment into a default by declaring that "the check is now being returned to the plaintiffs as a late payment." Whether it was actually returned or was held by the defendant and later cashed is not shown. Equity does not countenance such tactics. Under the circumstances the payment made on December 2d has the same effect as if it had been made on the 1st.

The fact that the Bisnos' payments under discussion were made under the order granting a preliminary injunction does not change the result. That order directed defendants to do nothing; its pressure rested upon plaintiffs, not defendants, Bisno was in position where he had to pay but Sax was free to accept or reject his tenders. If not willing to forego the benefit of existing defaults Mrs. Sax could have rejected the said payments, whereupon Bisno would have been required to keep his tender good by deposit of his money in court or in a bank. (See Civ. Code, § 1500; 47 Cal.Jur.2d, § 13, p. 267.)

But defendant should not be permitted to accept the money tendered in discharge of a defaulted obligation and retain the advantage of collecting that same amount through a foreclosure proceeding or otherwise.

The foregoing discussion disregards failure to pay the attorney fee claimed by Mr. Ward in the sum of $500. The evidence shows no more than the fact that Mr. Ward had, to Mr. Bisno's knowledge, "filed a petition [in the bankruptcy court] asking permission to foreclose"; that Ward claimed a fee of $500 and Bisno offered to compromise for $300 conditioned upon his ability to refinance the existing loan; also that the trustee did not insist upon payment of the attorney fee as a condition to *reinstatement* of the loan. The proof does not show the nature or extent of the attorney's services, whether necessary to protection of the security for the loan (Mrs. Bisno was not in bankruptcy) or any factual basis for the judge's fixing a fee through judicial knowledge. The trial judge remarked during the arguments: "What about this $500 attorney's fees? There has been no proof or anything on that." Later, in defining the scope of memoranda to be submitted by counsel, the following colloquy occurred: "THE COURT: This $500 attorney's fees; the necessity of showing what that was for and whether or not it was reasonable. MR. WARD: If the court wishes to reopen the case I can get on the stand and testify to the court as to what services I have rendered. In two minutes I can tell the court what it consisted of, if the court so desires. THE COURT: Well, you say it is not necessary to do that. MR. SACKS: That is exactly it. THE COURT: That is what I want to know. I want some authority." Later the court found: "That, as of said date [July 31, 1958], there was also due and payable $500.00 as attorney's fees incurred by defendant ROSE SAX for legal services rendered for the protection of the security underlying the aforesaid deed of trust, which services consisted of the following"; then follow three paragraphs of asserted services, none of which, other than the filing of the petition for leave to foreclose, is supported by evidence as distinguished from assertions of counsel for respondents. The court also awarded to respondent Sax' attorney the sum of $500 "as legal fees for services rendered by him for the protection of the security underlying the aforesaid deed of trust, as more particularly set forth in the findings of fact hereinabove." The finding and the award are erroneous for there is not sufficient evidence to warrant a holding that an attorney

fee was due at or before the time of trial. Hence its non-payment prior to trial does not affect our discussion (*infra*) of the effect of accepting all payments due up to that time in the absence of an acceleration.

Speaking generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default and precludes a foreclosure sale based upon such preexisting delinquency. The same is true of a tender which has been made and rejected. (*Trinity County Bank* v. *Haas,* 151 Cal. 553, 556 [91 P. 385]; *Mason* v. *Luce,* 116 Cal. 232, 237 [48 P. 72]; *Belloc* v. *Davis,* 38 Cal. 242, 249-251; *Home Owners' Loan Corp.* v. *Washington,* 108 Utah 469 [161 P.2d 355, 357-358]; *Bond & Mortgage Guarantee Co.* v. *White,* 142 N.Y.S. 1038, 1040; *McFarland* v. *Christoff,* 120 Ind. App. 416 [92 N.E.2d 555, 557-558]; *S. D. Walker, Inc.* v. *Brigantine Beach Hotel Corp.,* 44 N.J.Super. 193 [129 A.2d 758, 763-764].) "A tender of payment or performance sufficient to discharge the mortgage may preclude foreclosure and a proceeding already commenced may be stopped by paying what is due into court." (59 C.J.S. § 506, p. 826.)

"Where a mortgagee accepts payment of an install-ment of interest after it is in arrear, it is a waiver of his right to declare the entire indebtedness due on account of such default." (41 C.J. § 1055, p. 861.)

Respondent argues that the foregoing authorities are inapplicable here because the payments made by appellant were made after declaration of an acceleration of maturity of the entire debt, principal and interest. The preponderance of authority seems to be to the effect that acceptance of a partial payment after declaration of acceleration does not preclude the completion of a pending foreclosure (*Dunn* v. *Barry,* 35 Cal.App. 325, 329 [169 P. 910]; *Harris* v. *Whittier Bldg. & Loan Assn.,* 18 Cal.App.2d 260, 268 [63 P.2d 840]; *Sellman* v. *Crosby,* 20 Cal.App.2d 562, 564-565 [67 P.2d 706]), although acceptance of the entire amount obviously would have that effect (36 Am.Jur., § 450, p. 912; 33 Cal. Jur.2d, § 348, p. 741). Manifestly, acceptance of payment of defaulted principal or interest cures that particular de-fault. (*Trinity County Bank* v. *Haas, supra,* 151 Cal. 553, 557.) In the instant case all installments of principal and interest payable before the trial (absent acceleration) had been paid and accepted by respondent beneficiary. At the time of that hearing the only basis left for a foreclosure sale was the bare fact of notice of acceleration, for all installments

otherwise in default had been paid. To sustain a foreclosure at that time, based upon defaults which had been cured, would amount to enforcement of a penalty or a forfeiture, a thing which equity abhors.

 " 'The term "penalty" has a very comprehensive meaning. While often used as synonymous with the word "punishment," or as including a sum payable upon the breach of a private contract, it has also the more restricted meaning of a sum of money made payable by way of punishment for the nonperformance of an act or for the performance of an unlawful act, and which, in the former case, stands in lieu of the act to be performed.' . . . 'Forfeiture' imports 'a penalty' (*Muldoon* v. *Lynch,* 66 Cal. 536, 539 [6 P. 417]), a 'requirement to pay the sum mentioned as a mulct for a default or wrong.' [Citations.]" (*County of San Diego* v. *Milotz,* 46 Cal.2d 761, 766 [300 P.2d 1].) " 'A penalty need not take the form of a stipulated fixed sum; any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.' [Citation.] Such penalties cannot reasonably be justified as punishment for one who wilfully breaches his contract." (*Freedman* v. *Rector etc. of St. Mathias Parish,* 37 Cal.2d 16, 21-22 [230 P.2d 629, 31 A.L.R.2d 1].) The Freedman decision deals with an acceleration of payments on an installment contract, as do *Andrews* v. *Zook,* 125 Cal.App. 19, 23 [13 P.2d 518]; *Crofoot* v. *Weger,* 109 Cal.App.2d 839, 842 [241 P.2d 1017]; all of them characterize the right of acceleration as a penalty or forfeiture.

There is contrariety of opinion in this state as to whether that is the effect of a like clause in a mortgage or trust deed. It is said in *Dunn* v. *Barry, supra,* 35 Cal.App. 325, 328: "The mistake of appellant is in the assumption that herein is involved a forfeiture, as existed in the cases cited by them. 'Such a provision in a mortgage (i.e., a provision giving the mortgagee option to declare the entire amount due upon default in the payment of any installment of interest) is not construed a penalty, but an agreement as to the time when a debt shall become due, and enforceable according to its terms.' " To the same effect are *Whitcher* v. *Webb,* 44 Cal. 127, 131; *Young* v. *Burchill,* 96 Cal.App. 341, 343-344 [274 P. 379]. To the contrary *California Sav. etc. Soc.* v. *Culver,* 127 Cal. 107, 112 [59 P. 292], declares that: "It has been definitely settled, however, in this state that even where it is expressly declared on the face of the note that upon default

in the payment of any interest the whole principal shall become immediately and absolutely due, still such a clause is a mere penalty for the benefit of the payee or holder which he may waive by accepting interest after due, and that the statute in such a case does not begin to run until the principal becomes due according to the terms of the note. (*Belloc* v. *Davis,* 38 Cal. 242; *Mason* v. *Luce,* 116 Cal. 232 [48 P. 72]; *Richards* v. *Daly,* 116 Cal. 336 [49 P. 220].)'' The cited cases of *Belloc* v. *Davis,* and *Mason* v. *Luce,* definitely support the penalty concept.

Civil Code, section 3275, provides: ''Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, *or a loss in the nature of a forfeiture,* by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.'' (Emphasis added.) ▋ ''The test as to when a party will be relieved from a forfeiture is stated by Pomeroy, Equity Jurisprudence (5th ed.), section 433, as follows: 'Wherever a penalty or a forfeiture is used merely to secure the payment of a debt, or the performance of some act, or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead. . . . The test which determines whether equity will or will not interfere in such cases is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured.' '' (*Gonzalez* v. *Hirose,* 33 Cal.2d 213, 216 [200 P.2d 793].) ▋ At bar, respondent would enforce the acceleration clause for its own sake, but '' '[a] court of equity will scan very closely the enforcement of an acceleration clause which will work great hardship on the debtor.' '' (*Carmichael* v. *Rice,* 49 N.M. 114 [158 P.2d 290, 294, 159 A.L.R. 1072].)

▋ That a court of equity will relieve the debtor from the enforcement of an acceleration clause when confronted with genuinely equitable grounds therefor seems to be settled law. See annotation to 70 American Law Reports 993, 1000. This is true whether the court considers an acceleration of maturity as a penalty or not. A *nisi prius* judge pertinently observes in *Bard* v. *Rabinfried Realty Co.,* 126 Misc. 427 [213 N.Y.S. 44, 45]: ''[W]hatever the holding may be on this matter of definition, the courts have shown a tendency to

get away from the general rule, and in a number of cases have relieved mortgagees from their defaults on the basis of doing equity." Likewise, in *Caspert* v. *Anderson Apartments,* 94 N.Y.S.2d 521, 525: "There is no undeviating rule that equity must enforce the covenants of a mortgage regardless of surrounding circumstances. The whole system of equity jurisprudence presents an excellent example of the triumph of equitable principles over strict and inflexible dogmas of the common law. Pomeroy on Equity Jurisprudence, Section 382, Fifth Edition. The growth of the jurisdiction of equity is founded on cases which have broken away from rigid and irrevocable enforcement of agreements."

In *Trowbridge* v. *Malex Realty Corp.,* 198 App.Div. 656 [191 N.Y.S. 97, 102-104], an appellate division opinion, defendant-owner was relieved from default in payment of interest on a first mortgage; the second mortgage, which was under foreclosure, provided that 10 days default in paying the interest on the prior should constitute ground for acceleration of the debt secured by the second. The court adopted the view that acceleration is a penalty or a forfeiture (pp. 102-103). It pointed out that: "At the time of the trial nothing was past due on account of the bond and mortgage in suit, and there were no arrears in interest on the first mortgage and all taxes and assessments had been paid." (Pp. 103-104.) Further it said (at p. 101): "As to the power of a court of equity to relieve a mortgagor from a mere technical default in payment where such default is not willful, there can be no doubt." And at page 103: "There can be no doubt but that the clause for the payment of such interest was 'for the benefit of the security and its complete preservation.' And where it so clearly appears, as it does in the case at bar, that the plaintiff has been fully indemnified, equity should relieve the defendant from a mere technical default in the payment of interest on the prior mortgage." In a note upon "Equitable Relief from Operation of Acceleration Clauses in Mortgages" (22 Columb.L.Rev., 266, 267), the author reviews the Trowbridge case, *supra,* and remarks at page 267: "At first blush, the decision seems somewhat startling: the court refuses to give effect to the express provisions of the agreement. Such action, however, is not unusual. Equity frequently refuses to recognize the express contractual provisions for the security of a loan where their enforcement would not be consonant with substantial justice. Thus equity protects the mortgagor's equity of redemption and refuses to allow him to contract

away his right to redeem." After referring to other cases he says, at page 268: "In all the above cases, the stipulations not enforced concerned security. Their non-enforcement was due to the fact that the creditor was amply safeguarded without the need of subjecting the debtor to a forfeiture. . . . Both upon principle and authority, therefore, the decision in *Trowbridge* v. *Malex Realty Corp.* is correct. The mortgagor should be relieved from what amounts to a forfeiture where he is not wilfully in default and where the mortgagee is not damaged."

Mr. Justice Cardozo, dissenting in *Graf* v. *Hope Bldg. Corporation*, 254 N.Y. 1 [171 N.E. 884, 70 A.L.R. 984], at pages 886-888 [171 N.E.], says: "There is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal ad misericordiam, however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course. . . . To all this, acceleration clauses in mortgages do not constitute an exception. They are not a class by themselves, removed from interference by force of something peculiar in their internal constitution. In general, it is true, they will be enforced as they are written. . . . However fixed the general rule and the policy of preserving it, there may be extraordinary conditions in which the enforcement of such a clause according to the letter of the covenant will be disloyalty to the basic principles for which equity exists. . . . The restriction, however, is not obdurate, for always the gravity of the fault must be compared with the gravity of the hardship. [Citations.] Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path. [Citations.]" This dissent was quoted with approval in *Murphy* v. *Fox*, —— Okla. —— [278 P.2d 820-825]. Other New York cases apply the principles enunciated by Mr. Justice Cardozo. See *Norbant Realty Corp.* v. *A. C. Oaks, Inc.*, 116 N.Y.S.2d 215, 216; *Rockaway Park Series Corp.* v. *Hollis Auto. Corp.*, 206 Misc. 955 [135 N.Y.S.2d 588, 590]; *Scelza* v. *Ryba*, 169 N.Y.S.2d 462, 464.

California recognizes that: "Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention." (*Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309, 331 [44 P.2d 547].) In the same spirit it is said in *Wuest* v. *Wuest*, 53 Cal.App.2d 339, 346 [127 P.2d 934]: "Living as we do in

a world of change, equitable remedies have necessarily and steadily been expanded to meet increasing complexities of such changing times, and no inflexible rule has been permitted to circumscribe the power of equity to do justice. As has been well said, equity has contrived its remedies 'so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated,' and 'has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirement of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' (1 Pom. Eq.Jur., 4th ed., p. 125, § 111.)'' While the briefs and our own research have failed to reveal any case which is factually parallel with the one at bar, it does appear that principles concerning forfeitures were applied to a trust deed foreclosure in *McCue* v. *Bradbury*, 149 Cal. 108, 113 [84 P. 993].

Equity having taken jurisdiction over a cause does complete justice, even to the extent of exceeding the specific prayers of the complaint when necessary. *Petersen* v. *Ridenour*, 135 Cal.App.2d 720, 727 [287 P.2d 848] : ''It is fundamental that equity, having taken jurisdiction, will grant complete relief. This is especially true in a declaratory judgment action. 'If a controversy exists as in this proceeding and a complaining party is entitled to some relief a trial court may not refuse to declare the rights of the parties concerning the controversy. [Citation.] The purpose of the action is to set at rest or at least quiet, until the occurrence of further events, the rights and relations of the parties. [Citations.]'' ''[T]he absence of a prayer is not fatal, the court being charged under section 580, Code of Civil Procedure with the duty in a contested case of granting any relief consistent with the case made by the complaint and embraced within the issue.'' (See also *Selby* v. *Battley*, 149 Cal.App.2d 659, 664-665 [309 P.2d 120].)

 Elements of hardship are present here. The property belonged to Mrs. Bisno from July, 1954; it was the residence of both appellants and the wife had filed a declaration of homestead upon it. She testified that she had no independent income and did not have the funds to pay the obligation should the court rule that foreclosure could proceed; that she had attempted to refinance but without success. Mr. Bisno (but not Mrs. Bisno) had been in bankruptcy since April,

1956, and that proceeding was still pending at the time of trial. He had made unsuccessful efforts to refinance. In some manner he had raised the money necessary to pay all installments and taxes due up to the time of trial. The facts that the foreclosure sale was held in January, after judgment had gone against him in this action, and that the property was sold to a third party, argue inability to refinance in time to avoid the loss of the property.

We conclude that the facts of the instant case warrant and require that appellants be relieved of the effect of the acceleration declared by the beneficiary and trustee, whether it be deemed a forfeiture or not; that basic equitable principles so demand. The trial judge should have granted such relief upon the facts before him.

It seems that the foreclosure sale, originally noticed for September 9, 1958, was continued from time to time and finally was held on January 21, 1959, at which time the property was bought by one Arthur T. Kartheiser, who had actual knowledge of the instant action and purchased in the face of a lis pendens filed on January 5, 1959.[1] The price paid by Kartheiser has not been disclosed to the court; it would go to the beneficiary, of course. We do know that plaintiff had paid everything that normally was due at the time of trial; that defendants would keep plaintiffs' money while insisting that plaintiffs lose their $23,000 equity. So far as appears, the sale, when made, was supported by no existing default except as effectuated by notice of acceleration; all those mentioned in the notice of default and election to sell had been cured. The beneficiary could not accept the money to cover the existing defaults and continue to exercise the rights incident to a default.

 Respondent says this appeal should be dismissed because the case has become moot through the making of the trustee's foreclosure sale. Cases are cited to the effect that an appeal from an order denying a temporary injunction will not be entertained after the act sought to be enjoined has been performed (e.g., *Illinois Trust & Savings Bank* v. *Pacific Railroad Co.*, 115 Cal. 285 [47 P. 60]; *Wright* v. *Board of Public Works of the City of Los Angeles*, 163 Cal.

---

[1] These latter facts we know through judicial notice of *Katheiser* v. *Superior Court*, decided by us on October 21, 1959, 174 Cal.App.2d 617 [345 P.2d 135]. See, as to the propriety of judicial notice in this situation: *City of Los Angeles* v. *Abbott*, 217 Cal. 184, 193 [17 P.2d 993]; *Christiana* v. *Rose*, 100 Cal.App.2d 46, 52 [222 P.2d 891]; *Bailey* v. *Superior Court*, 142 Cal.App.2d 47, 55 [297 P.2d 795].

328 [125 P. 353]; *Foster* v. *Smith,* 115 Cal. 611 [47 P. 591]; *Bradley* v. *Voorsanger,* 143 Cal. 214 [76 P. 1031]; *Brennan* v. *American Trust Co.,* 3 Cal.2d 635 [45 P.2d 207].) Those cases seem applicable to the injunction feature of the instant action, but they have no application to the declaratory features of the complaint. As hereinbefore indicated the lower court should have concluded and declared that all defaults under the trust deed had been cured and that plaintiffs were entitled to a reconveyance upon payment of subsequently accruing sums. In an action seeking declaratory relief the court must do complete justice, even though it extend beyond the technical reach of the pleadings. (See authorities cited, *supra*; also *Putnam* v. *Putnam,* 51 Cal.App.2d 696, 697-698 [125 P.2d 525]; *Mills* v. *Mills,* 147 Cal.App.2d 107, 116 [305 P.2d 61]; *Jones* v. *Feichtmeir,* 95 Cal.App.2d 341, 344 [212 P.2d 933].)

Counsel for respondent argues, however, that the title having passed to a third party, Kartheiser, the court is powerless to do anything about it; that even a reversal of judgment in this action could not disturb Kartheiser's title. *Di Nola* v. *Allison,* 143 Cal. 106 [76 P. 976, 101 Am.St.Rep. 84, 65 L.R.A. 419], is invoked in support of this contention, the respondent's brief saying: "Where, pending appeal from order denying injunction to restrain trustee's sale, the property is sold by the trustee to a stranger to the action, the title of the third party will not be affected by a subsequent reversal of the judgment."

The Di Nola case, properly construed, does not lend support to respondent's position. It involved a mortgage foreclosure not a trust deed sale; plaintiff in that action (one Golinsky) bid in the property at sheriff's sale; after defendant had appealed from the judgment said Golinsky conveyed the land to Di Nola; thereafter the foreclosure judgment was reversed. Relying upon the rule "that if a stranger to the action purchases the defendant's property at the execution sale, his title thereto will not be affected by a subsequent reversal of the judgment" (*Di Nola,* p. 109), Di Nola brought an action to quiet his title. He prevailed in the lower court but the judgment was reversed in the cited case. The court said, at pages 113 and 114: "Any alienation of the property involved in an action while it is pending is subject to the rights of the other party, and will be subject to the judgment thereafter rendered in the case. (2 Pomeroy's Equity Jurisprudence, § 637 et seq.) . . . The plaintiff was chargeable with

notice at the time he purchased the land of the character of Golinsky's title, and he was therefore put upon inquiry and bound by all the facts which such inquiry would have disclosed. Upon such inquiry he would have learned that Golinsky had purchased the land at a sale under a judgment in an action in which he was the plaintiff; that before the execution of the sheriff's deed under the sale the defendants had appealed from the judgment, and that the appeal was still pending; that thereby the validity of Golinsky's title to the property was disputed by the defendants in that action, and would be defeated by a reversal of the judgment.'' Also, at page 115: ''As the effect of the reversal of the judgment was to set aside the sale to the Golinskys, the appellant herein was thereby restored to his original estate in the land.'' So far as applicable to the instant cause *Di Nola* implies that one who purchases at a trustee's sale with knowledge, express or implied, that the trustor is contesting the right to sell, ''is presumed to know the course of proceedings and state of the record from which the title of his grantor proceeded, and he is presumed to know, too, that the right of the defendant is to take an appeal within the statutory period, and also the consequences of the successful prosecution of this right; and he must be supposed to purchase with reference to these things.'' (*Di Nola*, at p. 114.)

That case was followed and applied to a trustee's sale in *Boggs* v. *North American Bond etc. Co.*, 6 Cal.2d 523, 526 [58 P.2d 918]. Cases such as those relied upon by respondent were distinguished, the court saying, concerning *Brennan* v. *American Trust Co., supra,* 3 Cal.2d 635: ''Our opinion further states that the actual sale of the property rendered the injunction proceeding moot. This statement was not necessary to the decision, inasmuch as we held that the judgment should be affirmed on the ground that the trial court properly denied the injunction, and in so far as it is in conflict with our holding herein it is disapproved.'' (P. 528.) However, the next paragraph says: ''We confine our decision herein to cases where the beneficiary under the deed of trust or his assignee purchases at the trustee's sale. We do not determine whether upon a reversal of an order denying a petition for postponement a trustee's sale held pending the appeal would be set aside where a third party is the purchaser.'' This leaves our present question open.

Judicial notice discloses that Kartheiser purchased in the face of a recorded lis pendens and with actual knowledge of

this suit. We held in *Kartheiser* v. *Superior Court, supra,* 174 Cal.App.2d 617, 620 [345 P.2d 135], that he is in privity with Sax, the trust deed beneficiary, and bound by the judgment. In their answer to the petition for mandate in the Kartheiser case the Bisnos averred that he was acting as agent for Mrs. Sax in making the purchase. This issue was not resolved by our decision in that case for it was not necessary. It remains open and, if not now formally raised in this case or Kartheiser's unlawful detainer action, it may be covered by supplemental pleadings. It cannot be decided here and now. Hence we cannot say that the present appeal is moot.

Other points discussed in the briefs require no discussion. The judgment is reversed.

Fox, P. J., and Herndon, J., concurred.

The petition of respondent Rose Sax for a hearing by the Supreme Court was denied January 28, 1960. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.