**KIXX, INC., also known as KIXX Radio, a Utah Corporation, Plaintiff and Respondent,**

v.

**STALLION MUSIC, INC., a Tennessee Corporation doing business in the State of Utah, and Bill Anderson, Defendants and Appellants.**

No. 16514.

Supreme Court of Utah.

April 30, 1980.

Don R. Petersen of Howard, Lewis & Petersen, Provo, for defendants and appellants.

Jeril B. Wilson, Provo, for plaintiff and respondent.

WILKINS, Justice:

Defendants appeal from judgment, entered by the District Court for Utah County, for the total amount outstanding on a promissory note, together with accrued interest thereon and attorney's fees. Defendants also appeal from the denial of their claim for an offset in the amount of $8,491.50.

Plaintiff agreed to sell and Defendant James William Anderson III (hereafter "Anderson") agreed to purchase substantially all of the assets of KIXX, Inc., including an assignment of the Federal Communi-

cations Commission (hereafter "FCC") license to operate a radio station in Provo, Utah, for a purchase price of $126,000, by written contract dated November 14, 1975. The purchase price was to be paid, $30,000 at the time of closing, approximately $55,000 by defendants assuming to discharge a promissory note payable by plaintiff to a third party, and the remainder by defendants' promissory note to plaintiff, the latter of which is the subject of this action.

After the purchase agreement was entered into, and before the sale was closed, it was necessary for the parties to make application to the FCC for approval of the assignment of the license to operate the radio station to Stallion Music, Inc., Anderson's nominee. Anderson is the president of Defendant Stallion Music, Inc. As a part of the FCC application, Stallion Music was required to conduct a "community need survey".

The closing of the sale was delayed for six months pending FCC approval of the assignment of the license. During this interim, plaintiff continued to operate the radio station, but in accordance with the purchase agreement, hired one Doug Dillon as operations manager at the request of defendants, and agreed to pay Dillon the salary designated by defendants. Defendants agreed to reimburse plaintiff for Dillon's time spent in conducting the community need survey. The evidence at trial, however, revealed that Dillon did not conduct the survey, and that another of plaintiff's employees undertook the duty. Plaintiff demanded to be reimbursed, and at the closing of the sale on May 26, 1976, Anderson agreed to pay Dillon's entire salary for the six-month period, to the surprise of defendants' attorney, Dean Booth, who was also vice president of Stallion Music, Inc. The amount of $8,491.50 was paid in cash together with the $30,000 due at closing, and the promissory note here at issue was drawn for the balance due in the amount of $43,962.46.

The note was executed by Anderson as president of Stallion Music, Inc., and guaranteed by him in his individual capacity on May 26, 1976. Payments on the note were due in 10 semi-annual installments commencing December 1, 1976, with interest at the rate of 8 percent. The maker agreed to pay all costs of collection, including 10 percent of the principal and interest of the note as attorney's fees in the event collection through an attorney became necessary.

The note contains an acceleration clause as follows:

It is expressly understood and agreed that if default be made in the payment of any of the aforesaid installments as and when the same shall become due and payable, and after thirty days notice thereof, then and in that event, the unpaid balance of the aforesaid principal sum, at the option of the holder, may become due and payable; TIME BEING THE ESSENCE OF THIS CONTRACT.

The first two installments were paid a few days after the due dates, and were accepted. On November 18, 1977, plaintiff sent both defendants notice that installment # 3 in the amount of $5,803.04 would become due on December 1, 1977. The installment was not paid, however, and on December 28, 1977, plaintiff sent the following notice to defendants by certified mail:

The undersigned, owner and holder of that certain note executed by you on May 26, 1976, hereby gives you notice that because of the default in payment of installment # 3, which was due to be paid on December 1, 1977, in the amount of $4,396.25 for principal and $1,406.79 for interest, which is unpaid as of the date hereof, hereby does elect and declare that the unpaid balance of principal of such note in the amount of $35,169.96 is now due and payable, and demand is hereby made on you to pay such sum of $35,169.96 plus accrued interest thirty (30) days from the date hereof.

The original of this letter, which was sent to Anderson at his Nashville, Tennessee address, was returned to plaintiff marked "refused". A copy was sent to Dean Booth, in Atlanta, Georgia. Plaintiff again sent copies of the notice to both defendants in January.

Dean Booth's response was to advise plaintiff of defendants' intention to counterclaim for the additional amounts paid by defendants to plaintiff for Dillon's salary, as it was without consideration. He stated "I would be . . . very surprised if my client pays the amount due but, on the contrary, looks forward with a considerable amount of anticipation to dealing with you on this matter." Anderson's response was more conciliatory, stating he had been in the Caribbean for three weeks, was disturbed by the correspondence between plaintiff and Booth, and hoped the matter could be resolved amicably. More correspondence between the parties followed, but neither defendant tendered payment of the delinquent installment nor did they offer to do so until shortly prior to the trial. Plaintiff refused acceptance at that time. Plaintiff again wrote to Anderson on February 22, 1978, stating "I now want the entire amount paid." Plaintiff initiated this action in April, 1978; defendants answered, claiming an offset, as noted earlier, in the amount of $8,491.50.

After a trial on the merits, the District Court entered its findings: that the promissory note was valid; that defendants had defaulted in the installment payments; that plaintiff gave proper notice to defendants of plaintiff's election to accelerate payments; that the remaining balance on the promissory note was $35,169.96; that defendants received full consideration at the time of the execution of the note; that it had become necessary for plaintiff to employ an attorney; that defendants agreed to pay plaintiff ten percent of the amount due on the note for the benefit and use of plaintiff's attorney. Judgment was entered in favor of plaintiff in the amount of $35,-169.96, together with attorney's fees of $3,500, and defendants' claimed setoff of $8,491.50 was denied.

Defendants first assert on appeal that the Court erred in determining that plaintiff gave defendants proper notice of its intention to accelerate payments. They argue that plaintiff was required to give thirty days notice of default of payment before acceleration would be operative; that plaintiff's premature exercise of the acceleration clause suspended payments due under the note, and that under these circumstances it was reasonable for defendants to conclude that payment of the delinquent installment would not be accepted, excusing them from making a tender of that amount.

It is generally well settled that acceleration clauses in negotiable instruments and other contracts will be enforced in accordance with the agreement of the parties.[1] Where the acceleration is optional with the payee upon the happening of some event, such as default in payment of an installment, courts have held that acceleration is not self-executing upon the default.[2] Some act on the part of the payee is required to effect the exercise of the option. Until the payee has exercised his option, the payor has the right to remedy the default by tendering payment of the delinquent amount. It is also well settled that notice of payee's intent to exercise his option is not necessary, unless the contract of the parties so requires,[3] and exercise of the option within the terms of the contract cuts off payor's right to remedy the default.[4]

Acceleration, here, is not self-executing, but is optional with the plaintiff. Plaintiff attempted exercise of this option by its letter of December 28, 1977. The note *ante*,

1. *Jacobson v. McClanahan*, 43 Wash.2d 751, 264 P.2d 253 (1953); *Messner v. Mallory*, 107 Cal.App.2d 377, 236 P.2d 898 (1951); *Foreman v. Myers*, 79 N.M. 404, 444 P.2d 589 (1968); *Smith v. Certified Realty Corp.*, Colo.App., 585 P.2d 293 (1978).

2. *Carmichael v. Rice*, 49 N.M. 114, 158 P.2d 290 (1945); *Buckman v. Hill Military Academy*, 182 Or. 621, 189 P.2d 575 (1948); *Browne v. Nowlin*, 117 Ariz. 73, 570 P.2d 1246 (1977); *A.A.C. Corp. v. Reed*, 73 Wash.2d 612, 440 P.2d 465 (1968).

3. *Thomas v. Foulger*, 71 Utah 274, 264 P. 975 (1928); *Hendron v. Bolander*, 101 Colo. 414, 74 P.2d 706 (1937); *Jacobson v. McClanahan*, supra, n. 1.

4. *Browne v. Nowlin*, supra, n. 2; *Home Owners' Loan Corp. v. Washington*, 108 Utah 469, 161 P.2d 355 (1945).

also requires thirty days notice. We are, here, concerned with whether the notice provision refers to the default or to the acceleration.

Plaintiff apparently believed that notice of its election to accelerate was necessary, and that the purpose of the thirty days was to enable defendants to accumulate sufficient money to pay the entire principal and interest, for in its letter of December 28, it stated: "demand is hereby made on you to pay such sum of $35,169.96 plus accrued interest *thirty (30) days from the date hereof.*" (Emphasis added.) But we do not construe the agreement of the parties in that manner. The acceleration clause of the note does not relate the required notice to plaintiff's exercise of its option to accelerate.

■ In skeletal form the language of the acceleration clause is: ". . . if default be made in . . . payment . . . when . . . due . . . and after thirty days notice thereof . . . *then* . . . the unpaid balance . . . may become due . . ." (Emphasis added.) It is clear that the notice required is notice of default, and plaintiff's option is exercisable only if defendants fail to remedy that default within thirty days after such notice. Plaintiff's exercise of its option was therefore premature as it did not allow defendants the thirty days to remedy the default.

■ We now turn to defendants' contention that they are excused from tendering payment of the delinquent installment because of plaintiff's premature exercise of its option to accelerate, as the law does not require a vain and useless thing.[5] By its letter of December 28, 1977, plaintiff demanded payment of the full amount of principal of the note. It reiterated that demand by its letter of February 22, 1978. It was reasonable for defendants to believe that nothing less than full payment would be accepted. The judgment of the District Court must be reversed, as plaintiff did not effectively exercise its option within the terms of the parties' agreement.

■ Defendants' second point on appeal is that the District Court erred in dismissing their claim for an offset in the amount of $8,491.50. They argue that plaintiff compelled defendants to pay that amount over and above the $126,000, to which plaintiff had agreed as the sales price, by threatening not to go forward with the sale unless it was paid. Defendants argue that plaintiff cannot compel them to give further consideration for something which plaintiff is already legally bound to do; and that payment of the $8,491.50 was without consideration. The District Court found that defendants received full consideration for this payment, and there is substantial, credible evidence in the record to sustain that finding. Defendants agreed to pay for the community need survey, in an amount undetermined at the time the sales contract was entered into. At the time of the closing, that amount was determined, agreed to by defendants, and paid. Defendants are not entitled to an offset and their argument is without merit.

Finally, defendants contend that the award of attorney's fees to plaintiff in the amount of $3,500 is unreasonable. As plaintiff did not effectively exercise its option to accelerate, it cannot prevail in this action and is not entitled to attorney's fees.

Reversed and remanded to the District Court for Utah County with instructions to enter its judgment in accordance with this opinion. No costs awarded.

CROCKETT, C. J., and MAUGHAN, J., concur.

HALL, Justice (concurring and dissenting):

I concur with the law stated in the majority opinion but am compelled to dissent from the application thereof to the facts of the instant case.

---

5. *Romero v. Schmidt*, 15 Utah 2d 300, 392 P.2d 37 (1964); *Hansen v. Christensen*, Utah, 545 P.2d 1152 (1976); *Vaughan v. Roberts*, 45 Cal. App.2d 246, 113 P.2d 884 (1941); *Jones v. Goldberger*, Okl., 323 P.2d 344 (1958); *Schmitt v. Sapp*, 71 Ariz. 48, 223 P.2d 403 (1950); *Carmichael v. Rice*, supra, n. 2.

I agree that the letter of December 28, 1977, did not effectively exercise the option to accelerate payment of the note inasmuch as it was premature; however, said letter was clearly notice of default. Following the majority's analysis, defendants had 30 days thereafter to make the required semi-annual payment. I do not believe that tender of the delinquent installment would have been, as stated by the majority, a "vain and useless thing." Relationships between the parties remained amicable, yet there was never even an attempt to make the delinquent payment. On February 3, 1978, defendant Anderson wrote plaintiff the following letter:

Dear John [John Hough, president of plaintiff corporation]:

I recently returned from working on board a cruise ship in the Caribbean for a couple of weeks, and I was both surprised and disturbed when I became aware of the recent correspondence that has transpired between you and Dean Booth. I was under the impression that the December note due to you from our organization had been paid and taken care of.

*    *    *    *    *    *

Not being a legal mind, I don't know exactly where we stand at this point in regards to straightening this matter out, but I want you to know that my intentions are certainly honorable and I hope that among the three of us, you, Dean and myself, that we can resolve this matter amicably and as soon as possible. I'm sorry for any inconvenience it may have caused you, and send my warmest personal regards.

On February 22, 1978, Hough responded, in pertinent part, as follows:

Dear Bill [Bill Anderson, president of defendant corporation]:

I just got back last Friday, February 17, after nearly three weeks overseas, and my secretary had sent me a copy of your letter of February 3. For your information, I am enclosing copies of all correspondence on this note payment matter, including copies of the acceleration notice and even Dean Booth's letter to me of December 15, stating that "I have forwarded your notice of payment due under the note from Stallion Music, Inc., to the bookkeeper in Nashville, and you should be receiving a check shortly."

*    *    *    *    *    *

What I really don't understand is, why the payment due December 1st was not paid, *and as of this date, there has been no offer even to make that installment payment.*

*    *    *    *    *    *

Frankly, Bill, the late payment of the first two installments by 9 days and 17 days, respectively, as well as the "excuse" letter of December 15 that the statement has been forwarded to bookkeeping for payment and the subsequent attitude expressed by Dean Booth in his letters alarm me to the extent that *I now want the entire principal amount and interest to be paid and to put this entire matter behind me.*

I will ait [sic] a few more days before starting any action to give you a chance to reflect on · this and telephone me. [Emphasis added.]

I do not believe that plaintiff's ineffective attempt to exercise the acceleration clause in December cut off its contractual rights thereafter. The letter of February 22, 1978, clearly exercised plaintiff's option to accelerate; and it was exercised more than 30 days after the December 28, 1977 notice of default. Plaintiff's complaint was subsequently filed on April 14, 1978.

Without specifying *when* the option was exercised, the trial court ruled as follows: "From all of the evidence the Court finds that the Note was legally accelerated." The trial court may well have applied the foregoing analysis. In any event, this Court has held that we will affirm a trial court's decision if we can do so on a proper ground even though the trial court assigned an incorrect reason.[1]

1. *Allphin Realty v. Sine*, Utah, 595 P.2d 860 (1979).

Concluding as I do, that the option was properly exercised, plaintiff is also entitled to attorney's fees. The promissory note provided as follows:

In case this note is collected by law, as through an attorney at law, all costs of collection, including ten per centum (10%) of the principal and interest as attorney's fees, shall be paid by the maker hereof. The trial court's findings included the following:

4. That the remaining balance on the promissory note is the sum of $35,169.96.
6. That it became necessary for plaintiff to employ an attorney to bring this action.
7. That defendants agreed to pay plaintiff 10 percent of the principle [sic] amount of the note for the benefit any [sic] use of plaintiff's attorney.

Based on the contract and the evidence presented, the court could reasonably conclude that "Plaintiff is entitled to judgment against the defendant in the sum of $3,500 for attorney's fees."

Finally, I agree with the majority's treatment with defendant's claim for an offset. The trial court found that defendants received full consideration for the $8,491.50 at the time of the execution of the promissory note. There is substantial, credible evidence in the record to sustain the court on this finding as well as on all others.

I would affirm all aspects of the decision and judgment of the trial court.

STEWART, J., concurs.